2018 IL App (4th) 150871

NO. 4-15-0871

FILED
May 16, 2018
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| JEREMI R. STEVENS, | ) | No. 15CF48 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Justices Steigmann and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1     In January 2015, defendant, Jeremi R. Stevens, was arrested and charged with aggravated unlawful use of a weapon. In July 2015, a jury found defendant guilty. At the September 2015 sentencing hearing, the trial court sentenced defendant to 24 months of probation.

¶ 2     On appeal, defendant argues (1) his conviction is void due to the Firearm Concealed Carry Act (Act) (430 ILCS 66/1 to 999 (West 2014)) being facially unconstitutional, (2) he was denied effective assistance of counsel due to counsel's failure to object to the videotape of defendant's arrest in a motion *in limine* hearing, (3) he was denied effective assistance of counsel due to counsel's failure to object to testimonial hearsay, and (4) his fines imposed by the circuit clerk should be vacated. We affirm in part and vacate in part.

¶ 3                                    I. BACKGROUND

¶ 4          In January 2015, defendant was driving westbound on Interstate 74 in the right lane when he cut in front of a semitruck in the left lane and became boxed in between two semitrucks. The driver in the truck behind defendant honked at him because the driver believed there was not enough room to fit in between the two trucks. Upon hearing the honk, defendant reached into his glove compartment and pulled out a handgun and waved it inside the car, showing the semitruck driver. The driver called the police, and defendant was arrested.

¶ 5          The State alleged defendant committed the crime of aggravated unlawful use of a weapon when he knowingly carried in his vehicle a firearm at a time when he was not on his own land, in his own abode, or in his own fixed place of business and that firearm was uncased, loaded, and immediately accessible and defendant had not been issued a currently valid license under the Act (count 1) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2014)). The State also alleged defendant committed the crime of aggravated unlawful use of a weapon when he knowingly carried in any vehicle a firearm at a time when he was not on his own land, in his own abode, or in his own fixed place of business and he was engaged in, or attempting the commission of, a misdemeanor involving the use or threat of violence against the person or property of another, namely aggravated battery, in that he, while traveling along Interstate 74, pointed a Smith and Wesson .40-caliber handgun in the direction of a vehicle, placing the passengers of the vehicle in reasonable apprehension of receiving a battery (count II) (720 ILCS 5/24-1.6(a)(1), (a)(3)(H) (West 2014)).

¶ 6          The State filed a motion *in limine* to admit a certified document from the Illinois State Police Firearm Services Bureau, which stated defendant had a valid Firearm Owner's Identification (FOID) card but not a concealed carry license. Defense counsel did not object to

the admission of the document, reserving his right to object on relevance grounds, and the document was admitted.

¶ 7        In July 2015, a jury trial commenced. At the conclusion of the trial, during the jury instruction conference, the trial judge dismissed count II because the State failed to present evidence defendant pointed the gun at anyone. The jury found defendant guilty on count I. In a September 2015 sentencing hearing, the judge sentenced defendant to 24 months of probation and assessed fines payable during the first 12 months of his probation.

¶ 8        This appeal followed. At oral arguments, the parties requested an opportunity to file supplemental briefs, and the court granted the request.

¶ 9                                II. ANALYSIS

¶ 10                          A. Constitutionality of the Act

¶ 11        Defendant argues his conviction, pursuant to sections 24-1.6(a)(1) and (a)(3)(A-5) of the Criminal Code of 2012 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2014)), is void because the Act is facially unconstitutional. We disagree.

¶ 12        The second amendment of the United States Constitution states "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the United States Supreme Court held the second amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." "[I]f a Bill of Rights guarantee is fundamental from an American perspective ***, that guarantee is fully binding on the States and thus *limits* (but by no means eliminates) their ability to devise

solutions to social problems that suit local needs and values." (Emphasis in original.) *McDonald v. City of Chicago*, 561 U.S. 742, 784-85 (2010).

¶ 13     When determining the level of scrutiny that should apply to second amendment cases, federal circuit courts have looked to the first amendment as a guide. See *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011). The court must determine "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." *Ezell*, 651 F.3d at 703. "[T]he Supreme Court's First Amendment fee jurisprudence provides the appropriate foundation for addressing *** fee claims under the Second Amendment." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013).

¶ 14     In the first amendment context, the Supreme Court has held governmental entities may impose licensing fees when they are designed " 'to meet the expense incident to the administration of the [licensing statute] and to the maintenance of public order in the matter licensed.' " *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941). "Put another way, imposing fees on the exercise of constitutional rights is permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity." *Kwong*, 723 F.3d at 165. The licensing fee must serve "the legitimate purpose of defraying the expenses incident to the administration and enforcement" of the licensing statute. *National Awareness Foundation v. Abrams*, 50 F.3d 1159, 1166 (2d Cir. 1995).

¶ 15     "[A] challenge to the constitutionality of a criminal statute may be raised at any time." *People v. Wright*, 194 Ill. 2d 1, 23, 740 N.E.2d 755, 766 (2000). "Statutes are presumed constitutional, and the party challenging a statute has the burden of establishing a clear constitutional violation." *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20, 960 N.E.2d 1071. A reviewing court "will affirm a statute's constitutionality if the statute is reasonably capable of

such an interpretation." *People v. Johnson*, 225 Ill. 2d 573, 584, 870 N.E.2d 415, 421 (2007). "[W]e will resolve any doubt on the construction of a statute in favor of its validity." *People v. Boeckmann*, 238 Ill. 2d 1, 6-7, 932 N.E.2d 998, 1001 (2010). "Moreover, a challenge to the facial validity of a statute is the most difficult challenge to mount successfully because an enactment is invalid on its face only if no set of circumstances exists under which it would be valid." *One 1998 GMC*, 2011 IL 110236, ¶ 20. This effectively means the specific facts of the case are irrelevant to a facial challenge. "[T]he specific facts related to the challenging party are irrelevant." *People v. Thompson*, 2015 IL 118151, ¶ 36, 43 N.E.3d 984. "The constitutionality of a statute is a question of law that we review *de novo*." *People v. Aguilar*, 2013 IL 112116, ¶ 15, 2 N.E.3d 321.

¶ 16 Under the aggravated unlawful use of a weapon statute (720 ILCS 5/24-1.6 (West 2014)), residents and nonresidents are required to have a currently valid license under the Act if they seek to carry a weapon in any vehicle. Defendant argues the licensing fee of the Act is unconstitutional because it is allocated to funds with no relation to the administration of the licensing statute. We disagree.

¶ 17 For nonresidents, like defendant, the State of Illinois charges a $300 fee for a concealed carry license, of which $250 is apportioned to the State Police Firearm Services Fund, $40 is apportioned to the Mental Health Reporting Fund, and $10 is apportioned to the State Crime Laboratory Fund. 430 ILCS 66/60(c) (West 2014).

¶ 18 The State Police Firearm Services Fund is a special fund created to receive "revenue under the Firearm Concealed Carry Act and Section 5 of the Firearm Owners Identification Card Act." 20 ILCS 2605/2605-595(a) (West 2014). The statute states as follows:

"The Department of State Police may use moneys in the Fund to finance any of its lawful purposes, mandates, functions, and duties under the Firearm Owners Identification Card Act and the Firearm Concealed Carry Act, including the cost of sending notices of expiration of Firearm Owner's Identification Cards, concealed carry licenses, the prompt and efficient processing of applications under the Firearm Owners Identification Card Act and the Firearm Concealed Carry Act, the improved efficiency and reporting of the LEADS and federal NICS law enforcement data systems, and support for investigations required under these Acts and law. Any surplus funds beyond what is needed to comply with the aforementioned purposes shall be used by the Department to improve the Law Enforcement Agencies Data System (LEADS) and criminal history background check system." 20 ILCS 2605/2605-595(b) (West 2014).

¶ 19    The Mental Health Reporting Fund is also a special fund which receives "revenue under the Firearm Concealed Carry Act." 30 ILCS 105/6z-99(a) (West 2014). The statute provides as follows:

"The Department of State Police and Department of Human Services shall coordinate to use moneys in the Fund to finance their respective duties of collecting and reporting data on mental health records and ensuring that mental health firearm possession prohibitors are enforced as set forth under the Firearm Concealed

Carry Act and the Firearm Owners Identification Card Act. Any surplus in the Fund beyond what is necessary to ensure compliance with mental health reporting under these Acts shall be used by the Department of Human Services for mental health treatment programs." 30 ILCS 105/6z-99(b) (West 2014).

¶ 20　　　　The State Crime Laboratory Fund uses its revenue for purposes that include, but are not limited to, the following:

"(1) costs incurred in providing analysis for controlled substances in connection with criminal investigations conducted within this State;

(2) purchase and maintenance of equipment for use in performing analyses; and

(3) continuing education, training and professional development of forensic scientists regularly employed by these laboratories." 730 ILCS 5/5-9-1.4(g)(1)-(3) (West 2014).

¶ 21　　　　The State Police Services Fund provides for sending notices of expiration for concealed carry licenses and improving efficiency in both local and federal criminal fingerprinting databases, which determines eligibility for concealed carry licenses by assessing an applicant's criminal history. 430 ILCS 66/35 (West 2014). The Mental Health Reporting Fund is responsible for reporting mental health records and allows the Department of Human Services to investigate an applicant's mental health and developmental disabilities. 430 ILCS 66/35 (West 2014). The State Crime Laboratory Fund is used to educate and train forensic scientists who may test ballistics, conduct firearm functionality tests, gunshot residue, DNA analyses, or other

evidence useful in gun cases. 730 ILCS 5/5-9-1.4(g)(3) (West 2014). The above funds either cover the administrative costs for the licensing scheme, the enforcement of the scheme, or relate to the overarching public interest in the management of lawful firearm ownership, which complies with the Supreme Court's fee jurisprudence. See *Cox*, 312 U.S. at 577; see also *National Awareness Foundation*, 50 F.3d at 1166. The party challenging the constitutionality of a statute has the burden of clearly establishing a constitutional violation. *Davis v. Brown*, 221 Ill. 2d 435, 442, 851 N.E.2d 1198, 1203 (2006). Defendant has presented no evidence the licensing scheme charges more than is necessary for the administration of the licensing statute and maintenance of public order in the matter licensed. *Cox*, 312 U.S. at 577. Defendant cannot simply shift the burden of research and proof to this court, as it is his burden alone to overcome the presumption of constitutionality. See *People v. Rizzo*, 2016 IL 118599, ¶ 48, 61 N.E.3d 92. As defendant has failed to meet his burden, the Act does not violate the United States Constitution.

¶ 22                                B. Ineffective Assistance of Counsel

¶ 23            A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11, 989 N.E.2d 192. To prevail on such a claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 687). " 'Effective assistance of counsel

refers to competent, not perfect representation.' " *Evans*, 209 Ill. 2d at 220 (quoting *People v. Stewart*, 104 Ill. 2d 463, 491-92, 473 N.E.2d 1227, 1240 (1984)). Mistakes in trial strategy or tactics do not necessarily render counsel's representation defective. See *People v. Benford*, 349 Ill. App. 3d 721, 729-30, 812 N.E.2d 714, 721-22 (2004) (finding defense counsel's decision not to file a motion to suppress was a trial tactic and did not constitute ineffective assistance of counsel).

¶ 24　　　　To establish the second prong of *Strickland*, "[a] defendant establishes prejudice by showing that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4, 890 N.E.2d 424, 426 (2008). A "reasonable probability" has been defined as a probability which would be sufficient to undermine confidence in the outcome of the trial. *Houston*, 229 Ill. 2d at 4. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 25　　　　　　　　　　　1. *Admission of Defendant's Statements*

¶ 26　　　　Defendant argues he received ineffective assistance of counsel because his counsel did not know about a videotape or police report that memorialized defendant's admission he grabbed a gun, which restricted the effectiveness of his defense. We disagree.

¶ 27　　　　While defense counsel stated in the posttrial hearing he did not receive the video of defendant's admission, there is no evidence his client did not inform him of the videotaped statement he gave, acknowledging possession and removal of the gun from the glove box. Nor is there any indication he did not receive a police report, which would have contained the same

information. We note during a recess in trial, before admission of the tape, the State brought defense counsel's attention to the video and may have alerted him to the content of the video, although it is not clear whether he was unaware of its contents. However, if the video was not introduced, the arresting officer, who heard the statement, could have testified and did testify to the same. Additionally, witnesses testified to seeing a gun waved in the car, and the officer testified to finding a loaded handgun in the glove compartment. The testimony presented the same evidence as the video, albeit from a different source. Defendant had to prove "but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *Houston*, 229 Ill. 2d at 4. Counsel's failure to observe the videotape prior to trial, given the other evidence presented, simply does not meet that burden.

¶ 28        Defendant fails to point to any aspect of his defense which was somehow hindered or impacted by counsel's failure to observe his videotaped admission of possession of the firearm. Defendant did not testify, which would have been a tactical decision made with his input. In addition, defendant would have us believe he, at no time during preparation for trial, discussed with counsel the fact he had given a videotaped statement to the police wherein he acknowledged possession of the handgun. This is not the sort of evidence a defendant would be likely to forget to mention to his trial counsel.

¶ 29        It is far more reasonable and likely to conclude the decision by defendant to forgo testifying in his own defense was due to his knowledge of the existence of the taped admission, which could have been used by the State to impeach his credibility should he have sought to testify contrary to his admission.

¶ 30        Defendant's assertion here is similar to the situation found in *People v. Rosenberg*, 213 Ill. 2d 69, 820 N.E.2d 440 (2004). There, the defendant complained that,

although he could have testified at a suppression hearing regarding his legitimate expectation of privacy in boxes containing drugs, doing so would have precluded him from denying ownership of the boxes at trial. This is because the suppression hearing testimony, although normally inadmissible at trial, could have been used to impeach him. Our supreme court noted, " 'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury.' " *Rosenberg*, 213 Ill. 2d at 80 (quoting *Harris v. New York*, 401 U.S. 222, 225 (1971)).

¶ 31            Here, defendant appears to argue his attorney's failure to view the videotaped statement, in which the defendant was a participant, somehow affected his ability to present a defense contrary to the statements previously recorded. Instead, defendant's counsel successfully attacked the ability of the witnesses to actually see what defendant was doing in his own vehicle, thereby preventing the State from using the statements to impeach his client if he attempted to testify otherwise and winning a dismissal of count II in the process.

¶ 32            This is not an ineffective defense; it was more likely the only defense available to him short of perjury should he have attempted to testify otherwise.

¶ 33            Defendant's counsel first raised the issue of the video, described to the trial court its contents and noted his objection was one of completeness, not surprise. Counsel wanted the other digital video discs played as well in order to establish the basis for his client's presence on the video intended to be played by the State. Whether he viewed the video before trial is not the issue. He clearly knew about it, had been provided a police report mentioning it, and was likely told about it by his own client.

¶ 34      2. *Admission of the Certified Report on Defendant's Gun License Status*

¶ 35      Defendant argues he received ineffective assistance of counsel due to counsel's failure to object to the admission of a certified report, which stated defendant had not applied for a concealed carry license, citing *People v. Diggins*, 2016 IL App (1st) 142088, 55 N.E.3d 227, because it violated defendant's right to confrontation. We disagree.

¶ 36      We first analyze whether the right to confrontation under the sixth amendment of the United States Constitution was violated. The confrontation clause guarantees, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. "Admission of testimonial hearsay is error unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination." *People v. Leach*, 2012 IL 111534, ¶ 140, 980 N.E.2d 570.

¶ 37      In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held the sixth amendment of the United States Constitution requires unavailability and prior opportunity to cross-examine where testimonial hearsay is at issue. Violations of the right to confront a witness are subject to harmless-error analysis. *People v. Patterson*, 217 Ill. 2d 407, 428, 841 N.E.2d 889, 901 (2005).

¶ 38      In the case before this court, the State sought to admit the certified report into evidence through a motion *in limine*, citing Illinois Rules of Evidence 902(1) and (4) (eff. Jan. 1, 2011), which state the following:

> "*Domestic Public Documents Under Seal*. A document bearing a
> seal purporting to be that of the United States, or of any State,
> district, Commonwealth, territory, or insular possession thereof, or
> the Panama Canal Zone, or the Trust Territory of the Pacific

Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

* * *

*** *Certified Copies of Public Records*. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any statute or rule prescribed by the Supreme Court."

However, merely satisfying a hearsay exception is not enough for admission. See *Crawford*, 541 U.S. at 60-62 (holding the rule of satisfying a hearsay exception for admission set forth in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), is overturned in regards to testimonial hearsay). As stated, admission requires satisfying the hearsay exception, as well as witness unavailability and a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68.

¶ 39     While defendant cites *Diggins*, we find *People v. Cox*, 2017 IL App (1st) 151536, 89 N.E.3d 898, is more on point. The court in *Cox* distinguished *Diggins* from the facts before it. In *Diggins*, 2016 IL App (1st) 142088, ¶ 7, the defense counsel objected to the admission of a certified letter into evidence. However, in *Cox*, the defense counsel did not object to the admission of certification from a state employee, which stated the defendant did not have a FOID card. *Cox*, 2017 IL App (1st) 151536, ¶ 83. Since the defense counsel did not object, he waived

the opportunity for prior cross-examination by the affirmative statement that he had no objection, "even though it was clear that meant there would be no cross-examination prior to its admission." *Cox*, 2017 IL App (1st) 151536, ¶ 83.

¶ 40 Here, at the pretrial hearing, defense counsel did not object to the admission of the certified report, only reserving an objection for relevance, and the trial court admitted the document. While not argued by the State, we will, as the court in *Cox* did, engage in an invited-error doctrine analysis. *Cox*, 2017 IL App (1st) 151536, ¶¶ 71-76.

¶ 41 "Simply stated, a party cannot complain of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217, 821 N.E.2d 283, 287 (2004). "Moreover, when a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, [he] cannot contest the admission on appeal." *People v. Bush*, 214 Ill. 2d 318, 332, 827 N.E.2d 455, 463 (2005). "The rationale behind this well-established rule is that it would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings." *Swope*, 213 Ill. 2d at 217.

¶ 42 Defendant had multiple opportunities to object to the admission of the certified report. The first opportunity arose at the pretrial hearing, where defense counsel said he had no objection to the admission. Again, at trial, defense counsel allowed the admission of the exhibit without objection. If counsel had objected, the State could have cured the error at trial by calling the official who created the document as a witness. See *Bush*, 214 Ill. 2d at 333. However, defense counsel affirmatively waived his objection to the admission of the document on sixth amendment confrontation clause grounds. See *Cox*, 2017 IL App (1st) 151536, ¶ 83.

¶ 43          Defendant contends trial counsel was ineffective for failing to object at the pretrial hearing or trial. Prior to the admission of the certified report at trial, the arresting officer testified defendant did not have a concealed carry license or apply for one but he had a FOID card. After these statements, the certified document was entered without objection as a self-authenticating document. Accordingly, the information was presented to the jury even without the document. Additionally, there is nothing which could have prevented the State from calling an authentication or foundation witness absent defendant's acquiescence in the use of the document. Barring some showing by defendant that such a witness was otherwise unavailable to the State, the defendant fails to show how he was prejudiced. The burdens of production and persuasion are on defendant, and courts do not presume the existence of either element. *People v. Ganus*, 148 Ill. 2d 466, 477-78, 594 N.E.2d 211, 216-17 (1992) (Miller, C.J., specially concurring). Therefore, defendant cannot meet the prejudice prong, and his argument of ineffective assistance of counsel fails.

¶ 44          Defendant also contends the testimony by the arresting officer is hearsay. Defendant notes the officer testified to checking and learning defendant did not have a concealed carry license. Defendant claims there is no evidence indicating the officer had firsthand knowledge defendant did not have a license. However, even if the statements were objectionable hearsay, any error caused was invited by defense counsel's decision to allow admission of the certified report. It may have been part of defense counsel's trial strategy not to object to something so easily proved in order to avoid appearing unreasonable to the jury—we do not know. What we do know is, prior to trial, defendant did not object to the admission of the certified report, which contained the same information. Clearly, defense counsel's strategy was not to contest the admission of this information. See *People v. Perry*, 224 Ill. 2d 312, 344-45,

864 N.E.2d 196, 216 (2007). Assuming *arguendo* counsel's performance was deficient by failing to object to the introduction of the officer's testimony, there was no prejudice because the certified document was admitted without objection. As stated earlier, nothing in the record indicates the certifying custodian was unavailable for trial. As such, defendant fails on the ineffective assistance of counsel claims.

¶ 45                                    C. Assessments

¶ 46        Defendant argues this court should vacate four fines improperly imposed by the circuit clerk, namely a $10 arrestee's medical assessment, a $5 drug court program assessment, a $10 state police services assessment, and a $15 state police operations assessment.

¶ 47        This court has previously addressed the impropriety of the circuit clerk imposing judicial fines. See *People v. Larue*, 2014 IL App (4th) 120595, ¶¶ 55-73, 10 N.E.3d 959. "Although circuit clerks can have statutory authority to impose a fee, they lack authority to impose a fine, because the imposition of a fine is exclusively a judicial act." (Emphases omitted.) *People v. Smith*, 2014 IL App (4th) 121118, ¶ 18, 18 N.E.3d 912. Thus, "any fines imposed by the circuit clerk are void from their inception." *Larue*, 2014 IL App (4th) 120595, ¶ 56. The propriety of the imposition of fines and fees presents a question of law, which we review *de novo*. *People v. Guja*, 2016 IL App (1st) 140046, ¶ 69, 51 N.E.3d 970.

¶ 48        The State concedes the aforementioned clerk-imposed fines should be vacated, citing *Larue*, 2014 IL App (4th) 120595, ¶ 57; *People v. Bell*, 2012 IL App (5th) 100276, ¶ 42, 968 N.E.2d 1262; *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 31, 979 N.E.2d 1030; and *People v. Sulton*, 395 Ill. App. 3d 186, 193, 916 N.E.2d 642, 648 (2009). Following our extensive precedent on the matter, we agree with the parties that the aforementioned charges

assessed by the circuit clerk are fines and should be vacated. See *Larue*, 2014 IL App (4th) 120595, ¶ 57 (finding arrestee's medical assessment is a fine); *Millsap*, 2012 IL App (4th) 110668, ¶ 31 (stating state police operations assessment is a fine); *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 134, 55 N.E.3d 117 (stating the state police services assessments are fines); *Sulton*, 395 Ill. App. 3d at 193 (finding drug court assessment is a fine when it does not relate to the defendant's prosecution).

¶ 49        Defendant also argues this court should vacate the Violent Crime Victims Assistance (VCVA) assessment (725 ILCS 240/10 (West 2014)) because it is a fine imposed by the circuit clerk. As part of the sentence, the trial judge filed a written order concerning fines and stated defendant must pay a VCVA assessment. The judge did not attach a monetary amount to the fine. The circuit clerk later assessed a $100 assessment. Defendant contends this is a clerk-imposed fine, quoting *People v. Smith*, 2014 IL App (4th) 121118, ¶ 63, 18 N.E.3d 912 ("[a]bsent a court order imposing a specific fine, it is well established the clerk of a court, as a nonjudicial member of the court, has no power to levy fines"). We disagree.

¶ 50        In the case before this court, the trial court imposed the VCVA assessment. The statute requires a $100 assessment for any felony. 725 ILCS 240/10(b)(1) (West 2014). Thus, the clerk was merely entering in the appropriate amount from the statute, not imposing the fine. Accordingly, we find the fine was properly assessed by the trial court.

¶ 51                                III. CONCLUSION

¶ 52        For the reasons stated, we affirm in part and vacate in part. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 53        Affirmed in part and vacated in part.