NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220213-U

NO. 4-22-0213

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 9, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| DOUGLAS R. BALLARD, | ) | No. 20CF255 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:    At a discharge hearing, the State's evidence was sufficient to prove beyond a
reasonable doubt defendant was not not guilty of resisting a peace officer, and
defendant was not denied effective assistance of counsel.

¶ 2    In February 2020, a grand jury indicted defendant, Douglas R. Ballard, with one

count of resisting a peace officer causing injury, a Class 4 felony (720 ILCS 5/31-1(a), (a-7)

(West 2020) (text of section effective until Jan. 1, 2023)). After a September 2020 hearing, the

Winnebago County circuit court found defendant unfit to stand trial and placed him in the

custody of the Department of Human Services (Department) for inpatient treatment in a secure

setting. In October 2021, defendant filed a motion for a discharge hearing (725 ILCS 5/104-25

(West 2020)). After a January 2022 discharge hearing, the court found defendant not not guilty

of resisting a peace officer causing injury. Defendant filed a motion to reconsider the finding of

not not guilty. After a February 2022 hearing, the court denied the motion to reconsider. The

court also extended defendant's treatment in the Department for no longer than 15 months.

¶ 3        Defendant appeals, contending he (1) should have been found not guilty at the conclusion of the discharge hearing and (2) was denied effective assistance counsel because counsel failed to request a sanity evaluation and raise the affirmative defense of insanity.  We affirm.

¶ 4                                  I. BACKGROUND

¶ 5        Before the grand jury indictment, defendant was charged by complaint with both resisting a peace officer causing injury (720 ILCS 5/31-1(a), (a-7) (West 2020) (text of section effective until Jan. 1, 2023)) and criminal trespass to property (720 ILCS 5/21-3(a)(2) (West 2020)).  The criminal trespass to property charge had alleged defendant knowingly entered upon the land of American Legion Post 1207, after receiving, prior to such entry, notice from Ashley Davis, post commander, such entry was forbidden.  The grand jury only returned an indictment for resisting a peace officer causing injury.  The indictment alleged defendant knowingly obstructed Officer Kenneth Farmer's performance of an authorized act within his official capacity, being defendant's arrest, knowing Officer Farmer to be a peace officer engaged in the execution of his official duties, in that defendant pulled away from Officer Farmer and proximately caused injury to Officer Farmer.

¶ 6        At the initial hearing in this case, the circuit court appointed defendant counsel. When the court read the resisting a peace officer charge, defendant asked if they could check Officer Farmer's credentials and see where Officer Farmer was from.  Defendant's appointed counsel asked for a mental-health assessment, which the court ordered.  The court also released defendant on a personal recognizance bond.  Defendant failed to appear at the next hearing, and the court issued a warrant for defendant's arrest.  Defendant was arrested and brought into court

on July 23, 2020. At the hearing, defendant indicated he did not understand why he was jailed for walking down the street and became agitated when the court read the indictment. Defendant also accused the state's attorney of setting him up. At the next hearing, defendant's counsel was unavailable, and the court continued the case. During the hearing, defendant noted the police officers were not "real Rockford cops."

¶ 7     At the beginning of the August 24, 2020, hearing, defense counsel raised a *bona fide* doubt of defendant's fitness and made an oral motion for a fitness evaluation. The circuit court appointed Dr. Terrance Lichtenwald to conduct the fitness evaluation. Defendant again became agitated during the hearing.

¶ 8     On September 28, 2020, the parties stipulated to Dr. Lichtenwald's qualifications and the findings in his report. In his report, Dr. Lichtenwald had found defendant unfit to stand trial. The circuit court accepted the parties' stipulation. Defendant again became agitated and did not recognize his attorney. The court entered a written order finding defendant unfit to stand trial and placed defendant in the custody of the Department for inpatient treatment in a secure setting.

¶ 9     All of the progress reports filed by the Department found defendant remained unfit to stand trial. On October 27, 2021, defendant filed a motion for a discharge hearing, noting he had not attained fitness within a year of the circuit court's unfitness finding.

¶ 10     On January 25, 2022, the circuit court held the discharge hearing. The State presented the testimony of the following: (1) Davis; (2) Cassie Amador, a Rockford police officer; and (3) Officer Farmer. It also presented two photographs depicting the injury to Officer Farmer's head. Defendant did not present any evidence.

¶ 11     Davis testified he was the post commander for the American Legion on South

Alpine Road in Rockford. On February 4, 2020, Davis was in his office at the American Legion when he was informed something unusual was going on. Davis went outside and encountered a man, who was later identified as defendant, yelling at a sign on the building. Davis began talking to defendant. Defendant continued to say two signs were in the wrong order and yelled at the American Legion for putting them in the wrong order. Defendant was spitting on the ground while he talked. Davis asked defendant to leave. Davis did not recall how many times he asked defendant to leave, but it was more than once. Defendant was very agitated and did not leave at first. Eventually, defendant appeared to walk away but then returned. Davis had to talk with defendant another two or three times before defendant finally left. When he did leave, defendant jumped down two four-foot retaining walls, which Davis thought was weird. Davis called the police, and a police officer responded to the American Legion. Davis provided the officer with a description of defendant and noted he was more concerned defendant would hurt himself than anything else. Davis described defendant as "irrational." Davis believed he expressed his concern about defendant's mental state to the officer. He also played a video of the incident for the police officer.

¶ 12　　　　Officer Amador testified that, on February 4, 2020, she was in her police uniform and driving a marked squad car. She was on her way to the American Legion when Officer Farmer informed her the suspect was at a different location. Officer Amador located defendant walking eastbound on State Street and South Alpine Road. Officer Amador activated the emergency lights on her squad car and exited the vehicle. She testified she was only investigating a criminal trespass complaint. Officer Amador approached defendant and asked him if he was at the American Legion, and defendant responded in the affirmative. Officer Amador then asked defendant for his identification. She informed defendant she was

investigating a criminal trespass complaint. Defendant started to get his identification out of his wallet but stopped and put it back in his wallet. Defendant then began walking away, and Officer Amador told defendant to stop a couple of times. Defendant also told Officer Amador he did not believe she was a police officer. Officer Amador told defendant she was a police officer, and defendant responded, "oh, Rockford" and "let's go to the station." Defendant kept walking, and Officer Amador followed in her squad car. Three additional officers arrived on the scene and started to approach defendant. According to Officer Amador, defendant was walking one way but still had his upper body turned to face the officers. Defendant took off in the direction of traffic, and the other officers went after defendant. The officers were able to detain defendant and place him in handcuffs. Officer Amador identified defendant in the courtroom as the person she observed walking away from the police.

¶ 13　　　　Officer Farmer testified he also was in his police uniform and driving a marked squad car that day. Officer Farmer went to the American Legion and spoke with Davis. Officer Farmer watched the surveillance video and gained a general description of defendant that he relayed to other officers. Officer Farmer agreed with Davis defendant was acting unusual on the surveillance video. Specifically, defendant was doing things normal people would not do in the winter. Upon learning Officer Amador had located defendant, Officer Farmer went to that location, and two other officers arrived at the same time. Officer Farmer identified defendant in the courtroom as the man he saw when he arrived at Officer Amador's location. They all started walking towards defendant at the same time, and defendant began to back away from them. Defendant was also yelling. Officer Farmer and the other officers continued to tell defendant to stop. Defendant continued to back away. Officer Farmer and the other officer made physical contact with defendant, took him to the ground, and a wrestling match ensued to get him into

custody.  Officer Farmer explained defendant would not give the officers his hands and they had to wrestle defendant to get his hands behind his back so he could be handcuffed.  During the struggle, defendant was trying not to be turned over and was pulling his hands away.  Defendant continued to try to get away when he was on the ground.  Officer Farmer received "a decent scratch" on his head during the wrestling match.  Once defendant was handcuffed, he was apologetic for fighting with the officers.

¶ 14  The State gave a brief closing argument, asserting defendant resisted a peace officer when he refused to stop and talk to Officer Amador and backed further into traffic when the other officers responded.  The State argued the officers were acting in their official capacity in investigating the criminal trespass complaint and their community caretaking function because defendant was in the middle of traffic.  Officer Farmer was then injured when defendant actively resisted the officers during the melee.

¶ 15  Defense counsel noted the indictment charged defendant with resisting Officer Farmer's arrest.  She then asserted the State had to prove defendant knew he was under arrest and the arrest was an authorized act.  Defense counsel cited *People v. Borders*, 2020 IL App (2d) 180324, 168 N.E.3d 718, for the proposition a person can resist a peace officer if the peace officer is not making an arrest.  She then argued the police officers lacked articulable suspicion to arrest defendant and asserted defendant had not committed criminal trespass at the American Legion.  In support of the latter assertion, defense counsel cited *People v. Gudgel*, 183 Ill. App. 3d 881, 540 N.E.2d 391 (1989).  Defense counsel also cited *People v. Gallagher*, 2020 IL App (1st) 150354, 181 N.E.3d 213, where the reviewing court found the police officer was not engaged in an authorized act.  Defense counsel noted the police in that case had no "true belief" the defendant was committing a trespass.  Last, defense counsel cited *People v. Ellis*, 199 Ill. 2d

28, 765 N.E.2d 991 (2002), for the proposition defendant had the right to refuse to provide his identification.

¶ 16 After the parties' arguments, the circuit court took a few minutes to review the case law cited by defense counsel. The court found the officers had probable cause defendant committed criminal trespass. It noted defendant was being arrested during the melee. The court further found defendant's case distinguishable because defendant was facing uniformed officers and seemed to appreciate the police needed him to stay where he was. As result of the struggle with defendant, Officer Farmer sustained a minor injury. Thus, the court found the State met its burden and found defendant not not guilty of resisting a peace officer causing injury.

¶ 17 Defense counsel filed a timely motion to reconsider. She asserted the circuit court's decision was against the law and the evidence and noted defendant presented case law relevant to the issues raised by him that supported a finding of not guilty. Defense counsel then argued the court erred by denying defendant's request to find the officers lacked probable cause to arrest defendant for criminal trespass to land. She further contended the State failed to prove the police officers were performing the authorized act of arresting defendant and not simply investigating defendant for a possible crime. The motion also asserted the State failed to prove defendant knew he was under arrest. Defense counsel then argued the following:

> "The Court failed to consider the Defendant's mental state, when the officer testified he did not believe she was a police officer, and the testimony [of] Mr. Davis and Officer Farmer also indicated that the Defendant was acting strangely, as seen in person and on the surveillance video, apparently talking to an imagined person; therefore it is probable he was delusional at the time of this occurrence."

¶ 18 On February 28, 2022, the circuit court held a hearing on the motion to

reconsider. Defense counsel noted one thing she did not strongly argue in her motion was the argument defendant may not have knowingly resisted arrest because he was being delusional at the time of the incident. She simply noted she had seen some case law along those lines and thought she would raise that as an issue. The State relied on its prior arguments as to the other issues and only addressed the "additional argument made today." The State noted the testimony regarding the several squad cars, the police in uniform, and a statement by defendant. After hearing the parties' arguments, the court denied defendant's motion to reconsider. That same day, the court entered an agreed order, setting the maximum treatment ending date for defendant as December 28, 2022 (15 months from September 28, 2021).

¶ 19          On March 16, 2022, defendant filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. Mar. 12, 2021). See 725 ILCS 5/104-25(f) (West 2020) (providing if the circuit court fails to enter an order of acquittal, the defendant may appeal the judgment in the same manner provided for an appeal from a criminal conviction). Accordingly, this court has jurisdiction of defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 20                              II. ANALYSIS

¶ 21                       A. Sufficiency of the Evidence

¶ 22          On appeal, defendant contends he should have been acquitted because the State's evidence was insufficient to prove beyond a reasonable doubt he committed the offense of resisting a peace officer causing injury. The State contends its evidence was sufficient.

¶ 23          A discharge hearing under section 104-25 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-25 (West 2020)) takes place only after a defendant has been found unfit to stand trial and is not a criminal proceeding. *People v. Mayo*, 2017 IL App (2d) 150390, ¶ 3,

79 N.E.3d 359. Our supreme court has explained a discharge hearing under section 104-25 is "an innocence only hearing, that is to say, a proceeding to determine only whether to enter a judgment of acquittal, not to make a determination of guilt." (Internal quotation marks omitted.) *People v. Waid*, 221 Ill. 2d 464, 470, 851 N.E.2d 1210, 1214 (2006). With such hearings, the question of guilt is deferred until the defendant is fit to stand trial. *Waid*, 221 Ill. 2d at 471, 851 N.E.2d at 1214.

¶ 24 At a discharge hearing, the circuit court may make one of three findings. *People v. Manns*, 373 Ill. App. 3d 232, 238, 869 N.E.2d 437, 441 (2007). First, if the evidence presented at a discharge hearing is sufficient to establish the defendant's guilt beyond a reasonable doubt, the court finds the defendant "not not guilty," and the defendant is subject to further treatment, ranging from one to five years depending on the offense. (Internal quotation marks omitted.) *Mayo*, 2017 IL App (2d) 150390, ¶ 3. "Second, the court may acquit the defendant." *Manns*, 373 Ill. App. 3d at 238, 869 N.E.2d at 441. Third, "the court may acquit the defendant based on a finding the defendant is not guilty by reason of insanity." *Manns*, 373 Ill. App. 3d at 238, 869 N.E.2d at 441.

¶ 25 In this case, the circuit court found defendant not not guilty of resisting a peace officer causing injury. While a judicial finding of not not guilty does not result in a conviction, the standard of proof is the same as that required for a conviction. *Mayo*, 2017 IL App (2d) 150390, ¶ 29. "Thus, the applicable standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mayo*, 2017 IL App (2d) 150390, ¶ 29.

¶ 26 A person commits the offense of resisting a peace officer when he or she

knowingly resists or obstructs the performance by one known to the person to be a peace officer. 720 ILCS 5/31-1(a) (West 2020). Thus, the State must prove the following: (1) the defendant knowingly obstructed a peace officer, (2) the officer was performing an authorized act in his or her official capacity, and (3) the defendant knew the officer was a peace officer. *People v. Baskerville*, 2012 IL 111056, ¶ 32, 963 N.E.2d 898. A person convicted of resisting a peace officer whose violation was the proximate cause of an injury to a peace officer is guilty of a Class 4 felony. 720 ILCS 5/31-1(a-7) (West 2020).

¶ 27                                                  1. *Knowingly Obstruct*

¶ 28        Defendant first contends the State failed to prove he knowingly obstructed Officer Farmer's performance. The State disagrees.

¶ 29        Obstruction of a peace officer under section 31-1 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/31-1 (West 2020)) "requires that the obstruction must be knowingly done; meaning that the defendant must be consciously aware that his conduct is practically certain to cause the result." (Internal quotation marks omitted.) *People v. Mehta*, 2020 IL App (3d) 180020, ¶ 38, 156 N.E.3d 608. "[K]nowledge must often be proven through circumstantial evidence." *Mehta*, 2020 IL App (3d) 180020, ¶ 40.

¶ 30        In this case, the officers never told defendant he was being arrested. However, "[t]he statement, 'you are under arrest,' is not absolutely necessary to create the knowledge that one is being arrested." *Borders*, 2020 IL App (2d) 180324, ¶ 56. "Although the intention to arrest must be communicated, and defendant's understanding of that intent is a factor to be considered, [t]he test must be not what the defendant *** thought, but what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes." (Internal quotation marks omitted.) *Borders*, 2020 IL App (2d) 180324, ¶ 56.

¶ 31     At the discharge hearing, Officer Amador testified she activated her emergency lights on her marked squad car before stopping the car to speak with defendant. Officer Amador exited her squad car wearing a police uniform and asked defendant if he had been at the American Legion. Defendant replied in the affirmative. Officer Amador asked for his identification and explained she was investigating a criminal trespass complaint. Defendant started to produce his identification but then put it back in his wallet. Defendant began walking away from the squad car. Officer Amador instructed him to stop several times, but he continued to walk away. Three other police officers, including Officer Farmer, arrived on the scene. They too instructed defendant to stop. As the other officers approached defendant, he continued to walk away. The officers ran after him. Officer Farmer also testified and explained he and two other officers pulled up to defendant and Officer Amador's location at the same time. Officer Farmer was in his police uniform and a marked squad car. As Officer Farmer and the other officers approached defendant, verbal commands to stop were given. Defendant did not stop, and Officer Farmer and the two other officers took him to the ground. According to Officer Farmer, a wrestling match ensued. He explained defendant would not give the officers his hands, so the officers had to wrestle with him to get his hands behind his back. Officer Farmer noted defendant was trying to pull his hands away and was trying not to be turned over. Defendant was trying to get away from the officers. Once the officers had defendant's hands behind his back, they were able to place handcuffs on him.

¶ 32     As such, defendant was aware early on in the encounter he was being investigated for a criminal trespass complaint and had been asked to stop by one officer when three other officers arrived on the scene and also demanded him to stop. Multiple officers pursued defendant and took him to the ground. Defendant continued to try to get away from the officers

when he was on the ground and refused to put his hands behind his back. A reasonable man, innocent of any crime, would have thought he was being arrested when he was pursued by multiple officers and taken to the ground.

¶ 33     This case is distinguishable from *Borders*, 2020 IL App (2d) 180324, ¶ 59, where the State's evidence did not establish beyond a reasonable doubt the defendant knowingly resisted arrest. There, the defendant had been awake for no more than five minutes when he was restrained from reentering his home, even though he was voluntarily cooperating with police requests. *Borders*, 2020 IL App (2d) 180324, ¶ 59. Less than 10 seconds after the defendant was restrained from reentering his home and without telling him that he was under arrest, two officers grabbed the defendant from behind, forcefully put him on the ground, and told him to put his hands behind his back. *Borders*, 2020 IL App (2d) 180324, ¶ 59. The police had the defendant in handcuffs less than 45 seconds after one of the officers began moving toward him. *Borders*, 2020 IL App (2d) 180324, ¶ 59. The defendant had not committed any crime, nor did the police have probable cause to believe he had committed one. *Borders*, 2020 IL App (2d) 180324, ¶ 59. The reviewing court found it would have taken a reasonable person in the defendant's situation most, if not all, of that time to realize he was being arrested. *Borders*, 2020 IL App (2d) 180324, ¶ 59. Here, a much longer encounter had ensued before the officers took defendant to the ground, and defendant was aware one of the officers was investigating him for criminal conduct. Defendant was also not cooperating with any police requests at the time he was taken to the ground.

¶ 34     Additionally, defendant contends the officers were only investigating the trespassing complaint and did not intend to arrest him. While Officer Amador testified she was investigating a criminal trespassing complaint, Officer Farmer testified he grabbed defendant to

take him into custody. Thus, we disagree with defendant Officer Farmer was not attempting to arrest defendant when he grabbed defendant and took him to the ground.

¶ 35      Accordingly, we find the State's evidence was sufficient to prove beyond a reasonable doubt defendant knowingly obstructed Officer Farmer's arrest of him.

¶ 36                     2. *Knowledge of Status as a Peace Officer*

¶ 37      Defendant next contends he did not know Officer Farmer was a peace officer. The State contends its evidence was sufficient to prove defendant knew Officer Farmer was a peace officer.

¶ 38      In support of his argument, defendant cites Officer Amador's testimony that, early in her encounter with defendant, he indicated he did not believe she was a police officer. Before defendant made the statement, he had already refused to provide his identification to Officer Amador. At the time Officer Amador was speaking with defendant, she was wearing her police uniform and had been driving a marked squad car. Officer Amador informed defendant she was a police officer, and defendant responded with "oh, Rockford" and "let's go to the station." Defendant then began walking away from Officer Amador. Viewing the aforementioned evidence in the light most favorable to the State, the trier of fact could have found defendant's disbelief Officer Amador was a police officer was just further noncompliance with her authority and not actual disbelief she was a police officer. Moreover, Officer Farmer was also in his police uniform and driving a marked squad car when he arrived on the scene. The evidence at the discharge hearing is silent as to what the other two police officers were wearing. However, if Officer Farmer was the only one of the three additional officers on the scene wearing a police uniform, his presence in the same uniform as Officer Amador reinforced Officer Amador's statements she was a police officer.

¶ 39 Accordingly, we find the State's evidence was sufficient to find beyond a reasonable doubt defendant knew Officer Farmer was a peace officer.

¶ 40                                    3. *Performance of an Authorized Act*

¶ 41 Defendant last argues the State's evidence was insufficient to establish Officer Farmer was performing an authorized act within his official capacity. Specifically, defendant contends that, because Officer Farmer lacked probable cause to arrest defendant for criminal trespass at the time he grabbed defendant, Officer Farmer was not performing an authorized act. However, in *People v. Locken*, 59 Ill. 2d 459, 464-65, 322 N.E.2d 51, 53-54 (1974), our supreme court held section 31-1 must be read in conjunction with section 7-7 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, ¶ 7-7 (now 720 ILCS 5/7-7)) and, by enacting section 7-7, the legislature intended the making of an unlawful arrest is to be considered an authorized act for purposes of section 31-1. Thus, "under *Locken*, resistance of even an unlawful arrest by a known officer would be a violation of section 31-1." *People v. Villarreal*, 152 Ill. 2d 368, 374-75, 604 N.E.2d 923, 926 (1992). As such, even if Officer Farmer lacked probable cause to arrest defendant for criminal trespass, his act of arresting defendant was still an authorized act for purposes of section 31-1.

¶ 42 Accordingly, the State's evidence was sufficient for the circuit court to find defendant guilty beyond a reasonable doubt of resisting a peace officer causing injury.

¶ 43                                    B. Effective Assistance of Counsel

¶ 44 Defendant also asserts he was denied effective assistance of counsel because counsel failed to (1) request a sanity evaluation and (2) raise the affirmative defense of insanity at defendant's discharge hearing. The State disagrees.

¶ 45 This court analyzes ineffective assistance of counsel claims under the standard set

forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

¶ 46                                                1. *Deficient Performance*

¶ 47         To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. The State asserts defendant's counsel's decision to not request a sanity evaluation or raise the affirmative defense of insanity was trial strategy.

¶ 48         A review of the record shows defense counsel chose to pursue a strategy the State could not prove defendant committed the crime of resisting a peace officer. In closing arguments at the discharge hearing, defense counsel's arguments primarily focused on the actions of the police and did not address defendant's mental health at the time of the incident. Defense counsel cited case law supporting her arguments. As defendant notes, defense counsel did not suggest defendant was delusional during the incident until after the discharge hearing. At that point, defense counsel's strategy at the discharge hearing had already been unsuccessful, and counsel was raising a new argument as to why the circuit court's judgment was incorrect. Both attorneys' statements at the hearing on the motion to discharge indicated defense counsel's argument defendant was delusional was a new one. Thus, we disagree with defendant the record

rebuts the State's claim defense counsel made an intentional decision to pursue a different strategy than not guilty by reason of insanity. Moreover, since defense counsel did not raise the argument at the discharge hearing, this case is distinguishable from this court's recent decision in *People v. Penn*, 2022 IL App (4th) 210084-U, cited by defendant. There, during closing arguments, defense counsel argued the defendant lacked the ability to form the state of mind to commit the offenses and asked the circuit court to find the defendant not guilty by reason of insanity. *Penn*, 2022 IL App (4th) 210084-U, ¶ 46. Additionally, we note, "[m]istakes in trial strategy or tactics do not necessarily render counsel's representation defective." *People v. Stevens*, 2018 IL App (4th) 150871, ¶ 23, 112 N.E.3d 609.

¶ 49 Defendant does not explain how defense counsel's strategy at the discharge hearing was unreasonable or irrational. In the cases cited by defendant, the trial strategies pursued by the defense counsel were unsound. In *People v. Young*, 220 Ill. App. 3d 98, 108-09, 581 N.E.2d 371, 379-80 (1991), the reviewing court found the defendant was denied effective assistance of counsel at a discharge hearing because counsel did not even argue a defense of insanity. There, the "defense counsel put on no witnesses and engaged in minimal cross-examination or argument." *Young*, 220 Ill. App. 3d at 107, 581 N.E.2d at 379. Defense counsel also presented a defense that was unsound as a matter of law. *Young*, 220 Ill. App. 3d at 107, 581 N.E.2d at 379. On the record before it, the reviewing court found defense counsel's failure to even argue the defense of insanity was not objectively reasonable. *Young*, 220 Ill. App. 3d at 108, 581 N.E.2d at 379. Likewise, in *Manns*, 373 Ill. App. 3d at 241, 869 N.E.2d at 444, the insanity defense was the only viable defense the defendant had. In this case, defense counsel presented a viable defense.

¶ 50 Additionally, as stated, the circuit court can make three findings at a discharge

hearing: an acquittal, not guilty by reason of insanity, and not not guilty. *Manns*, 373 Ill. App. 3d at 238, 869 N.E.2d at 441. Each finding has different commitment procedures for a defendant. With an acquittal judgment, the State may request the court to commit the defendant to the Department under the provisions of the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 *et seq*. (West 2020)). 725 ILCS 5/104-25(b) (West 2020). If the State does not make a request, the defendant is released. See 725 ILCS 5/104-25(g)(3) (West 2020) (providing "[i]f the defendant is not committed pursuant to this Section, he or she shall be released"). In the case of a finding of not guilty by reason of insanity, the proceedings after acquittal by reason of insanity under section 5-2-4 of the Unified Code of Corrections (730 ILCS 5/5-2-4 (West 2020)) apply. 725 ILCS 5/104-25(c) (West 2020). If the circuit court makes a finding of not not guilty, the court may remand the defendant for further treatment and the one-year time limit set forth in section 104-23 shall be extended for up to a maximum of 15 months if the defendant was charged with a Class 2, 3, or 4 felony. 725 ILCS 5/104-25(d)(1) (West 2020). Thus, the possible outcome for a defendant from the different findings is part of the determination of whether to pursue an outright acquittal or a not guilty by reason of insanity finding or both at a discharge hearing. The aforementioned statutory provisions support the State's position defense counsel intentionally chose to pursue only an acquittal finding at the discharge hearing.

¶ 51 Defendant also contends defense counsel's failure to investigate defendant's capacity to appreciate the criminality of his conduct and request a sanity evaluation cannot be deemed trial strategy because defense counsel did not have a full and complete knowledge of defendant's state of mind at the time of the offense. In support of this contention, defendant cites *People v. Truly*, 230 Ill. App. 3d 948, 954, 595 N.E.2d 1230, 1234 (1992), and *People v.*

- 17 -

*Howard*, 74 Ill. App. 3d 138, 142, 392 N.E.2d 775, 778 (1979), both of which found ineffective assistance of counsel at *trial* due to counsel's failure to fully investigate a defense. At a discharge hearing, defendant does not risk the possibility of a criminal conviction and different considerations come into play. While a sanity evaluation would be evidence for an insanity defense at the discharge hearing, it is hard to imagine what sanity evaluation would contribute to the determination of the strategy to pursue at the discharge hearing where defendant's behavior during the incident and afterwards is detailed in the record. Under defendant's theory, defense counsel would almost always be obligated to obtain a sanity evaluation for every discharge hearing regardless of the strategy counsel wanted to pursue at the hearing. In all of the cases cited by defendant where defense counsel was ineffective for failing to present an insanity defense at a discharge hearing, defense counsel failed to present another viable defense. This is not the situation in this case. Additionally, as previously explained, we disagree with defendant that raising a new argument in a posthearing motion rebuts the claim defense counsel had a strategy at the discharge hearing of only pursuing an outright acquittal.

¶ 52    Accordingly, we find defense counsel's failure to obtain a sanity evaluation and present an insanity defense was trial strategy and does not establish deficient performance.

¶ 53                                    2. *Prejudice*

¶ 54    "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601. Since we have found defendant failed to establish defense counsel's performance was deficient, we need not address defendant's prejudice argument. Accordingly, we find defendant was not denied effective assistance of counsel.

¶ 55                                III. CONCLUSION

¶ 56        For the reasons stated, we affirm the Winnebago County circuit court's judgment.

¶ 57        Affirmed.