[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13977
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-00139-CAP-JFK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAURICIO WARNER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 3, 2016)

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

A Northern District of Georgia jury convicted Mauricio Warner on all 50 counts of an indictment that charged him with obtaining individuals' identities and using such identities to file over 5,000 false income tax returns resulting in millions of dollars in refunds that were deposited in bank accounts Warner controlled.[1]  He now appeals his convictions.  The seeks the vacation of his convictions and a new trial on the grounds that the District Court abused its discretion (1) in refusing to permit a polygraph examiner testify to the results of a polygraph examination he administered to Warner; (2) admitting into evidence Government exhibits 500 and 500A, spreadsheets of fraudulently submitted tax returns, as business records; and (3) permitting each juror to have a copy of the indictment throughout trial.  We consider these points in turn.

## I.

A district court's decision to admit or exclude expert testimony under Federal Rule of Evidence 702 is reviewed for abuse of discretion, *United States v. Gilliard*, 133 F.3d 809, 812 (11th Cir. 1998), which is the standard we apply in reviewing evidentiary rulings in general.  *Brown*, 415 F.3d 1257, 1264-65 (11th Cir. 2005).    A district court abuses its discretion when it "applies the wrong law,

---

[1]  Of the 50 counts, 16 alleged violations of 18 U.S.C. § 1343 (wire fraud), 16 counts alleged violations of 18 U.S.C. § 1028A (aggravated identity theft), 16 counts alleged violations of 18 U.S.C. § 287 (false claims), and two counts alleged violations of 18 U.S.C. § 1957 (money laundering).  The District Court sentenced Warner to prison for a total of 240 months.

2

follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *Id.* at 1266.

Federal Rule of Evidence 702 provides that an expert witness may testify in the form of an opinion if the expert's specialized knowledge will "assist the trier of fact to understand the evidence or to determine a fact at issue." *United States v. Brown*, 415 F.3d at 1266. *Dow Pharms.*, 509 U.S. 579 590-91, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993); *see also* Fed. R. Evid. 702.

The results of a polygraph examination are not inadmissible *per se*. *United States v. Piccinonna*, 885 F.2d 1529, 1535 (11th Cir. 1989) (*en banc*). The trial judge in the exercise of discretion may admit the results of such examination to impeach or corroborate witness testimony. *Id.* at 1536.

The District Court did not abuse its discretion in concluding that the polygraph examination was inadmissible under Rule 702. The question posed by the examiner addressed an issue that was to be decided by the jury, that is, whether Warner knowingly filed tax returns without the individuals' authority or knowing that they were not entitled to the refund requested. Since Warner took the stand and answered the same questions, the jury was capable of determining his credibility without the aid of an expert.

3

II.

Federal Rule of Evidence 1006 authorizes the admission into evidence of a summary of voluminous business records but only where the originals or duplicates of those originals are available for examination or copying by the other party.  Fed. R. Evid. 1006; *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1184 (11th Cir. 2006).

The business record exception to the hearsay rule under Federal Rule of Evidence 803(6) states, in relevant part, that a record will be admitted if:

> (A)    the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B)    the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C)    making the record was a regular practice of that activity;
> (D)    all these conditions are shown by the testimony of the custodian or another qualified witness . . .
> (E)    the opponent does not show that the source of information or the method of circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).  "Rule 803(6) requires that both the underlying records and the report summarizing those records be prepared and maintained for business purposes in the ordinary course of business and not for purposes of litigation." *Arias-Izquierdo*, 449 F.3d at 1183-84.  We have held that "[t]he touchstone of admissibility under [Rule 803(6)] is reliability, and a trial judge has broad

4

discretion to determine the admissibility of such evidence." *United States v. Bueno-Sierra*, 99 F.3d 375, 378 (11th Cir. 1996).

Computer generated business records are admissible under the following circumstances: "(1) [t]he records must be kept pursuant to some routine procedure designed to assure their accuracy, (2) they must be created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive), and (3) they must not themselves be mere accumulations of hearsay or uninformed opinion." *United States v. Glasser*, 773 F.2d 1553, 1559 (11th Cir. 1985) (emphasis omitted) (holding that a district court did not abuse its discretion by admitting computer printouts containing compilations of multiple transactions relating to mortgage accounts under the business records exception); *see also United States v. Ford*, 784 F.3d 1386, 1395 (11th Cir. 2015) (holding that summary charts of tax refunds were admissible under Rule 803(6) because they presented "bare facts pulled from Ford's bank account records and various tax returns").

In *Arias-Izquierdo*, we held that a typed summary of handwritten business records created solely for litigation was inadmissible hearsay evidence. 449 F.3d at 1184. We noted that the facts were distinguishable from *United States v. Fujii*, 301 F.3d 535, 539 (7th Cir. 2002), because the records in *Fujii* were "electronically

5

stored information and the summary was simply a printout of that information."
*Id.*

In *Fujii*, the District Court admitted airline check-in and reservation records and flight manifests that were kept in the ordinary course of business and printed at the government's request. *Fujii*, 301 F.3d at 539. The Seventh Circuit held that "[c]omputer data compiled and presented in computer printouts prepared specifically for trial is admissible under Rule 803(6), even though the printouts themselves are not kept in the ordinary course of business." *Id.* (emphasis omitted). The court reasoned that "because the information was printed out at the request of the [government] does not deprive the printouts of its business-record character." *Id.*

We find no abuse of discretion in the admission of discretion by admitting Government exhibits 500 and 500A under Rule 803(6). Although the spreadsheets were formatted to be easier to understand and printed for litigation, the underlying records were kept in the ordinary course of business and the data was not modified or combined when entered into the spreadsheet. *See Arias-Izquierdo,* 449 F.3d at 1184; *see also Fujii*, 301 F.3d at 539.

Even if the record were not admissible under the Rule 803(6) exception or Rule 1006, the error was harmless because there was strong evidence presented without the spreadsheets supporting Warner's conviction. *United States v.*

6

*Langford*, 647 F.3d 1309, 1323 (11th Cir. 2011) ("An error is harmless unless there is a reasonable likelihood that it affected the defendant's substantial rights.").

### III.

The decision to provide the jury with a copy of an indictment is committed to the district court's sound discretion. *See United States v. Haynes*, 573 F.2d 236, 241 (5th Cir. 1978); *Bruce v. United States*, 351 F.2d 318, 320 (5th Cir. 1965).

As a general rule, a "trial court may, in the exercise of discretion, allow the indictment to be taken into the jury room." *Bruce*, 351 F.2d at 320. Likewise, a court may provide the jury copies of the indictment before trial, provided that the court gives specific instructions that the indictment is not evidence. *United States v. Tucker*, 526 F.2d 279, 283 (5th Cir. 1976); *see also Haynes*, 573 F.2d at 242 ("The jury was properly instructed that the indictment itself did not constitute evidence, and the indictment contains no inflammatory or pejorative language that would create any prejudice against the accused"). In *Tucker*, we upheld a defendant's conviction after the court provided the jurors with a pencil and a photocopy of the indictment before trial. *Tucker*, 526 F.2d at 283. We reasoned that, although we were "mildly skeptical of this procedure, the potential for prejudice was avoided here by specific instructions, delivered shortly before and repeated immediately after the copies of the indictment were distributed, to the effect, that the indictment was not evidence." *Id.* We distinguished *Tucker* from

7

*United States v. Baker*, 418 F.2d 851 (6th Cir. 1969), because the Sixth Circuit found that the distribution of copies of the indictment without any cautionary instruction was error. *Id.* at 283 n.7.

There was no abuse of discretion here. The court specifically instructed the jurors on two separate occasions that the indictment was not evidence or proof of any guilt. *See Tucker*, 526 F.2d at 283. Even if the court's lack of contemporaneous instructions was error, it was harmless.

For the foregoing reasons, Warner's convictions are

AFFIRMED.