NOTICE

Decision filed 08/20/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220283-U

NO. 5-22-0283

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 11-CF-1772 |
| | ) | |
| TREMAINE L. ALLEN, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justice Boie concurred in the judgment.
Justice McHaney dissented.

**ORDER**

¶ 1    *Held*: The circuit court did not err in dismissing defendant's postconviction petition following a third-stage hearing where defendant failed to make a substantial showing that his trial counsel provided ineffective assistance.

¶ 2    Defendant, Tremain L. Allen, appeals from the circuit court's dismissal of his petition for postconviction relief following a third-stage evidentiary hearing. On appeal, defendant argues that he made a substantial showing that trial counsel provided ineffective assistance by failing to object to a State expert's hearsay testimony regarding the results of a chemical analysis performed by another chemist who was unavailable to testify at trial and thus violated defendant's sixth amendment right to confrontation (U.S. Const., amend. VI). For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4     The facts underlying defendant's convictions are outlined fully in the prior opinion addressing this case. *People v. Allen*, 2016 IL App (4th) 140137. We, therefore, set forth only the facts and procedural history relevant to the disposition of the issues raised in this appeal.

¶ 5     In December 2011, defendant was charged, by information, with several drug-related counts. Count I alleged defendant and Robert Castillo committed the offense of controlled substance trafficking, in violation of section 401.1 of the Illinois Controlled Substances Act (Act) (720 ILCS 570/401.1 (West 2010)), in that they knowingly and without lawful authority caused to be brought into the State of Illinois 900 grams or more of a substance containing cocaine with the intent to deliver that controlled substance. Count II alleged defendant committed the offense of unlawful criminal drug conspiracy, in violation of section 405.1 of the Act (*id.* § 405.1), in that he agreed with Castillo and Saville McKnight to possess with the intent to deliver 900 grams or more of a substance containing cocaine and thereafter obtained 900 grams or more of a substance containing cocaine for such purpose. Count IV alleged defendant and Castillo committed the offense of unlawful possession of a controlled substance with intent to deliver, in violation of section 401(a)(2)(D) of the Act (*id.* § 401(a)(2)(D)), in that they knowingly and unlawfully possessed with the intent to deliver 900 grams or more of a substance containing cocaine.[1]

¶ 6     In his opening statement, trial counsel told the jury that the evidence would show that defendant was a "blind mule." He defined a blind mule as "an individual who has the dope snuck into their automobile, into their truck, into their personal possessions, or in the case of [his] client, into the baggage that he was carrying with him when he came from Dallas, Texas, on the dates in question to the Decatur area."

---

[1]Count III only concerned a charge against Robert Castillo.

¶ 7 Detective Chad Larner testified that the street-crimes unit began investigating codefendant McKnight in 2011 based on information that he was trafficking "large amounts of cocaine" into Macon County. On November 12, 2011, officers from the Decatur Police Department and agents from the Drug Enforcement Administration (DEA) were monitoring McKnight's calls to Amtrak and Southwest Airlines regarding travel between Illinois and Texas. Detective Larner learned defendant purchased an Amtrak ticket to travel from Dallas to St. Louis on November 13, 2011. Officers traveled to the train station in St. Louis. Detective Jonathan Jones boarded the train and sat behind defendant. Larner and other officers then traveled to Springfield, Illinois, and observed defendant exit the train carrying a black nylon duffel bag and a black laptop bag. The train conductor later gave defendant a blue and white duffel bag from the luggage compartment.

¶ 8 Defendant left the train station via taxi and traveled to the home that his sister shared with McKnight in Decatur. Wanting to know whether defendant had transported for McKnight a large quantity of cocaine to Illinois from Texas, Larner contacted a confidential informant to arrange a meeting with McKnight. Larner equipped the informant with audio and video equipment and supplied him with $900. The informant's visit to McKnight's house was recorded, and the video and still images from the video were admitted into evidence and shown to the jury. At one point, the video showed two bags of a white powdery substance on a kitchen counter near where McKnight was using a microwave. The video showed McKnight wearing a surgical style mask while converting powder cocaine into crack cocaine. One of the images showed defendant standing in the doorway of the room adjoining the kitchen. The informant purchased cocaine from McKnight and provided the cocaine to the police.

¶ 9 Between November 13 and November 18, 2011, police officers intercepted conversations between McKnight and others. Larner decided to determine the location of defendant by "pinging"

3

his cellular telephone. On November 18, 2011, Larner "pinged" defendant's cell phone and discovered the phone was in Atoka, Oklahoma. Larner was able to confirm defendant was traveling along a Greyhound bus route. Officers proceeded to St. Louis, where the bus was scheduled to arrive on November 19, 2011. Two officers identified defendant and maintained surveillance on him and his bags once he arrived in St. Louis. Larner stated officers were going to arrest defendant in Springfield, Illinois, for an outstanding warrant. Once the bus arrived in Springfield, officers boarded the bus and explained they were conducting a transportation safety initiative. After defendant made a furtive movement, Larner drew his weapon and ultimately arrested defendant on an outstanding warrant for a traffic offense.

¶ 10    When questioned by Larner, defendant explained he was traveling with a blue and white duffel bag. Defendant stated he was responsible for all the contents inside the bag, packed it himself, and consented to a search of the bag. Upon inspection, Larner found a black duffel bag, which contained a pillow, a fleece blanket, and a manila envelope. When questioned about the envelope, defendant stated, "someone must have put it in there." Larner obtained a search warrant for the envelope. Inside, he found some dryer sheets and two cylindrical items, about the size of soda cans, covered in duct tape. Larner removed the duct tape, and a field test of the substance inside the packaging revealed the presence of cocaine.

¶ 11    Decatur Police Detective Scott Rosenbery testified that he conducted surveillance at the bus station in St. Louis on November 19, 2011. Inside the terminal, the officer observed defendant place a blue and white suitcase near the doors and walk away into the lobby area. During the time defendant left the bag unattended, the officer never saw anyone else touch the suitcase. When defendant returned to the terminal after 10 to 20 minutes, he opened the suitcase before sitting down. Once the bus to Springfield arrived, defendant took possession of the suitcase and lined up

4

to get on board. Detective Rosenbery and another officer boarded the bus to conduct surveillance. Detective Rosenbery stated officers arrested defendant when the bus reached Springfield.

¶ 12     Robert Krefft, a forensic scientist with the DEA, testified as an expert in forensic chemistry. He stated Kristen Beer, also a forensic scientist with the DEA, performed the analysis of the substances found on defendant. At the time of trial, Beer was serving in Afghanistan with the United States Coast Guard. Krefft stated he reviewed her notes and reports as they related to the exhibits. Krefft then testified regarding how tests are conducted when exhibits are received. He stated the tests run by Beer were the same tests he would conduct and were regularly relied upon by experts in the field. Krefft was asked to opine, based upon his experience and expertise, along with his review of Beer's records of her analysis, as to the nature and weight of the substance. Krefft testified that the State's exhibit number 6 contained 26.4 grams of a substance containing cocaine in powdered form and State's exhibit number 7A contained 916.9 grams of a substance containing cocaine in powdered form.

¶ 13     On cross-examination, trial counsel questioned Krefft on whether the exhibit numbers 6 and 7A contained 100 percent pure cocaine. The State objected, stating, "That's not the law in Illinois." The court sustained the objection, and the parties held a sidebar. After trial counsel asked Krefft what other substances were found with the cocaine and how may grams were in an ounce, cross-examination ended.

¶ 14     McKnight, who lived with defendant's sister, testified that he had been convicted in federal court of conspiracy to possess a controlled substance with the intent to deliver and received a 40-year sentence. In 2011, McKnight began purchasing cocaine in Texas and transporting it back to Illinois. McKnight flew down to Dallas, Texas, to meet with a new cocaine supplier, Robert Castillo, and asked for a ride from defendant, who lived somewhere in the Dallas area at that time.

McKnight stated defendant thought he was buying clothes and, given that defendant saw him with a lot of money, defendant asked if there was any way he could make some extra money. McKnight told him he could earn $1500 to $2000 by transporting a package to Decatur.

¶ 15    Defendant eventually arrived via taxi at McKnight's house in Decatur. McKnight removed the package from defendant's bag and "started messing with it." The confidential informant then showed up to buy cocaine, but first McKnight had to cook the powder cocaine into crack cocaine. A few days later, McKnight flew down to Texas. McKnight intended to buy a kilogram of cocaine at that time but did not have enough money. The cocaine was packaged into black wrapped cylinders that weighed about 18 ounces. Because McKnight did not have enough to buy a kilogram, Castillo took some off one of the two cylinders of cocaine that McKnight purchased. McKnight again called defendant for a ride to his hotel. Once McKnight got into defendant's car, he handed the two cylinders to defendant and told defendant that he would pay him to transport the packages to Decatur. The morning that defendant was supposed to arrive, McKnight received a text from defendant saying, "Busted." On cross-examination, McKnight acknowledged he did not know how much Castillo took from the second purchase.

¶ 16    Castillo testified he had been charged with calculated criminal drug conspiracy, unlawful possession of a controlled substance with the intent to deliver, and unlawful criminal drug conspiracy in the case involving defendant. By testifying, he hoped to receive consideration from the State. He stated McKnight purchased cocaine from him. In November 2011, Castillo and another man arranged to meet with McKnight to sell cocaine. Castillo and McKnight met at the dealer's house. Castillo stated the cocaine was wrapped into half kilogram pieces. He sold McKnight two wrapped pieces, one black and one with a sort of clear wrapping. Castillo averred that the clear wrapped cocaine was the one he took about a 100-gram portion out of to make up

6

for the fact that McKnight was short on money. Once the transaction was complete, McKnight called defendant to pick him up. Castillo testified that defendant came into the house with a gift bag, from which he pulled out condoms and gloves "to wrap up the kilos." The cocaine and scales were visible on the table in the room where they were located. Once finished, defendant put the cylinders in the bag and left the house. On cross-examination, trial counsel asked if Castillo was aware that the State's exhibit 7A was approximately 900 grams of cocaine. Castillo answered affirmatively, explaining that he weighed it in the house.

¶ 17      Richard Dollus, an employee of the DEA, testified that he participated in an investigation of McKnight in 2011. Dollus testified about several phone calls and text messages that took place between defendant and McKnight. After defendant was arrested in Springfield on November 19, 2011, Dollus allowed defendant to keep his cell phone while waiting to be interviewed in hopes he would contact McKnight. Defendant sent a text to McKnight that read: "Busted!!!!! Don't text back or call. In police station. Springfield." Later, when Dollus asked him about the manila envelope found in his suitcase, defendant said he did not know where it came from, and someone must have put it in his bag when he was in St. Louis.

¶ 18      Anastasia Petruncio, a fingerprint specialist with the DEA, testified that she examined the State's exhibit number 8, the manila envelope. She found two latent prints suitable for comparison. One latent print came from defendant's left-hand ring finger. The other latent print came from defendant's right ring finger and the "interdigital" of his right palm.

¶ 19      Defendant testified in his own defense. He stated he was 38 years old and, at the time of his arrest, lived in Duncanville, Texas, with his wife. He worked at Wells Fargo Bank as a "tele-banker" and was in the process of getting a new job at Chase Bank. Defendant stated McKnight visited Dallas in October and November 2011, and defendant would pick him up and drop him off.

7

Defendant traveled from Dallas to Springfield on or about November 12, 2011, via Amtrak, to pick up a van to sell in Dallas. He brought a manila envelope to McKnight, but he did not know what was inside. Defendant asked McKnight if it contained drugs, and he responded in the negative.

¶ 20    Defendant recalled another instance when he arrived at a house in Dallas and gave McKnight a box containing a food-saver, Teflon spray, and duct tape. Defendant stayed in the car while McKnight took the items inside and returned to the car 10 to 15 minutes later. McKnight gave defendant another envelope to carry from Dallas to Decatur. Defendant opened it and found a "large sum of money." Defendant took the money to the bank where he worked, and bank employees counted the money and completed a currency transaction report. Defendant planned to travel to Decatur to pick up the van. When he arrived at the Amtrak station in St. Louis, he saw "a lot of federal vehicles" and, because of his concerns with traveling with the large amount of cash, he decided to take the bus.

¶ 21    On the bus, defendant took his blue travel bag, which included a black bag, and two other bags. Police officers escorted him off the bus in Springfield. Detective Larner asked if he had packed his bags, and defendant stated he did. When asked if the bag could be searched, defendant said, "Yes." Defendant stated the black bag had a pillow, a blanket, and money. He had checked in Tulsa and St. Louis to make sure the envelope containing the money was still there. When defense counsel asked how his finger and palm prints appeared on State's exhibit number 8, the manila envelope from the black bag, defendant stated, "the only thing that I can go with is that I did reach my hand in St. Louis and in Oklahoma to touch the bag—the package to make sure it was there, the original package that I had." When Larner pulled out the envelope, defendant said, "That's not mine." Defendant then asked that it be opened because he wanted to see what it was.

Larner declined, stating he wanted to obtain a search warrant. While he was in custody, defendant sent a text message to McKnight. He stated the "busted" text referred to being caught with the money.

¶ 22 Following defendant's conviction, he filed a motion for a new trial, which was denied. The trial court subsequently merged counts II and IV with count I and sentenced defendant for controlled substance trafficking, a Class X felony, to 30 years' imprisonment in the Illinois Department of Corrections followed by 3 years of mandatory supervised release.

¶ 23 Defendant appealed, contending that the State failed to prove he knew the item he transported contained a controlled substance and that his sixth amendment right to confrontation was violated when Krefft was allowed to testify about the results of a chemical analysis performed by another chemist who did not testify at trial. See *People v. Allen*, 2016 IL App (4th) 140137, ¶¶ 33, 46. The Fourth District Appellate Court found that considering the totality of the evidence, the jury reasonably could have concluded that the "defendant knowingly brought cocaine into Illinois and committed the offense of controlled substance trafficking beyond a reasonable doubt." *Id.* ¶ 44. However, as to defendant's second contention of error, the Fourth District court reasoned:

> "[D]efense counsel did not object to Krefft's testimony regarding Beer's report. Counsel did not stipulate to the introduction of the evidence, either. However, the decision not to object to Krefft's testimony may have been a matter of trial strategy. We find it inappropriate to engage in plain-error review when the issue at hand may have been a strategic decision by counsel not to focus the jury's attention on the weight and content of the substances tested, *i.e.*, more than 900 grams of cocaine, but instead on whether defendant knowingly possessed the cocaine. Moreover, 'if "those trial tactics are to be the subject of scrutiny, then a record should be developed in which they can be scrutinized."

9

[Citation.]' *In re Carmody*, 274 Ill. App. 3d 46, 56 (1995). Whether counsel was deficient in his strategy and whether defendant was prejudiced as a result are matters best left for proceedings under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-7 (West 2014))." *Id.* ¶ 51.

¶ 24 Subsequently, defendant filed a postconviction petition and postconviction counsel filed an amended postconviction petition on January 15, 2020. The amended petition contained several contentions of error. Relevant to this appeal, the parties proceeded to a third-stage evidentiary hearing on whether trial counsel provided ineffective assistance for failing to object to Krefft's hearsay testimony and thus violated defendant's right to confrontation.

¶ 25 At the hearing, postconviction counsel offered in evidence the portion of the trial court transcript regarding Krefft's testimony. No other evidence was presented on behalf of defendant. Postconviction counsel acknowledged that trial counsel's defense strategy was that defendant did not know what was in the envelope that he was enlisted to deliver to McKnight, essentially that defendant was a "blind mule." Postconviction counsel contended that if the amount of the drugs did not matter, counsel could have stipulated to Beer's report or asked no questions when the State presents such evidence, but trial counsel here did not stipulate and engaged in cross-examination. As such, it was not a throw-away issue. Postconviction counsel argued that Krefft's testimony was inadmissible hearsay as well as a violation of his sixth amendment right to confrontation; thus, trial counsel was ineffective for failing to object to Krefft's testimony at trial. Counsel further contended that trial counsel's failure to object resulted in prejudice to defendant where the inadmissible hearsay was the only evidence offered by the State to prove elements of the offense; that is, the nature and weight of the substance for which defendant was being tried.

10

¶ 26    The State offered in evidence an affidavit from Daniel A. Noll, co-counsel and son of Jon Noll, the original attorney who tried the case. Daniel had entered his appearance, but his father had tried the case. In his affidavit, Daniel averred that his father had been diagnosed with dementia and was not available as a witness. He also averred that he did not specifically remember any issues related to the chemist who testified but knew the trial strategy developed by his father did not involve challenging whether the substance transported was actually cocaine. Rather, the focus of their trial strategy was that defendant was not aware that the substance was in his bag, making what the substance actually was irrelevant to his defense.

¶ 27    The State also presented the testimony of Tammara Wagoner, the assistant state's attorney who tried the case. Wagoner testified that she had Krefft testify in place of the original chemist who was deployed out of the country. Wagoner contacted defendant's trial counsel, Jon Noll, about Krefft testifying prior to trial, corroborated Daniel's affidavit, and testified that Jon had advised her that the defense did not intend to challenge what the substance was, but rather his defense was that defendant did not have knowledge of the controlled substance and that he was not even aware that the substance was in his suitcase. However, because of the nature of the case and defendant's position, Jon had indicated to Wagoner that he did not wish to stipulate to the evidence. Wagoner could not recall how long Beer would be out of the country and stated, "so, I can't guess, but I would assume that given that I reached out to the lab in order to have another chemist come in and testify, it was going to be more than a few months ***."

¶ 28    The State argued—*inter alia*—that counsel's failure to object was intentional trial strategy as the defense's theory was that defendant was a blind mule. It contended counsel's cross-examination of Krefft was to see if counsel "could make hay with the idea" that the substance was not really cocaine, and then wrapped up his cross-examination when the court shut him down. It

11

further contended there was no stipulation because trial counsel did not want to go against defendant's wishes. Alternatively, the State argued there was no prejudice.

¶ 29    The circuit court asked postconviction counsel whether there would have been a speedy trial issue if the trial court had continued the case to allow the expert to come back from Afghanistan. Postconviction counsel replied, "I know that there is an exception to the Speedy Trial Rule where the State can continue cases for good cause, and I'm sure that in circumstances like this, that the Court would have probably granted a continuance for good cause depending on how long this deployment was." However, postconviction counsel admitted he did not know how long Beer would have been gone.

¶ 30    The circuit court then found that Krefft's testimony was not hearsay because he rendered his own opinion based on the other chemist's reports. The circuit court further found that trial counsel had not provided ineffective assistance since the defense strategy was to focus on the fact that defendant did not know that he was transporting cocaine, and not whether the package actually contained cocaine. It also noted that it was clear the substance in this case contained cocaine and that it was over 900 grams. Accordingly, the court found it could not find trial counsel's representation fell below an objective standard of reasonableness or, had counsel objected, that there would have been a reasonable probability that the results would have been different. The circuit court granted the State's motion to dismiss. This appeal follows.

¶ 31                                    II. ANALYSIS

¶ 32    The Post-Conviction Hearing Act (Act) sets forth a three-stage procedure to be followed in evaluating a petition for postconviction relief. 725 ILCS 5/122-1 *et seq.* (West 2018). For a defendant to be entitled to relief under the Act, he must show that "he has suffered a substantial

12

deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged." *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006).

¶ 33  "At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit." *People v. Addison*, 2023 IL 127119, ¶ 18; 725 ILCS 5/122-2.1(a)(2) (West 2020). Thereafter, if the petition is not summarily dismissed, it must be set for further consideration in the second stage. 725 ILCS 5/122-2.1(b) (West 2020); *Addison*, 2023 IL 127119, ¶ 18. If a defendant makes the required substantial showing that his constitutional rights were violated at the second stage, he is entitled to a third-stage evidentiary hearing. *People v. Domagala*, 2013 IL 113688, ¶ 34. At the third stage, the circuit court determines whether the evidence presented demonstrates that the defendant was, in fact, entitled to relief. *Id.* It is the defendant's burden to make a substantial showing of a constitutional violation at the third-stage proceeding. *Pendleton*, 223 Ill. 2d at 473.

¶ 34  "At such a hearing, the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *Domagala*, 2013 IL 113688, ¶ 34. As such, a reviewing court will not reverse a circuit court's decision unless it is manifestly erroneous. *Pendleton*, 223 Ill. 2d at 473. Also, this court "may affirm the circuit court's judgment on any basis appearing in the record, whether or not the circuit court relied on that basis or whether or not the circuit court's ruling was correct." *People v. Gomez*, 2021 IL App (1st) 192020, ¶ 65.

¶ 35  To establish a claim of ineffective assistance of counsel, a defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) defense counsel's deficient performance prejudiced the defendant in that, absent such deficient performance, there is a reasonable probability that the result of the trial would have been different.

13

*People v. Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The failure to establish either prong precludes an ineffective assistance of counsel claim. *People v. Cherry*, 2016 IL 118728, ¶ 31.

¶ 36    Defendant contends—as he did at the third-stage evidentiary hearing—that trial counsel was ineffective for failing to object to Krefft's testimony which violated his right to confrontation. He further contends he was prejudiced because without Krefft's testimony, there is no evidence to satisfy the State's burden to show that defendant possessed more than 900 grams of a substance containing cocaine.

¶ 37    The State concedes that the confrontation clause was implicated by Krefft's testimony. It admits that Beer's report, as well as Krefft's testimony based on that report, was in fact testimonial in nature as it related to the prosecution of a known defendant. See *People v. Lewis*, 2019 IL App (1st) 160864, ¶ 37. The State asserts, however, that the evidence presented at the third-stage hearing established that trial counsel's decision not to object to Krefft's testimony was a strategic one; thus, trial counsel elected to waive any confrontation clause rights. It further argues that defendant was not prejudiced where he failed to allege that Beer could not attend for some suspicious circumstances or anything to indicate the analyst improperly performed her job. It contends—as postconviction counsel conceded—that the State would have been able to continue the trial to attempt to obtain Beer's testimony if an objection had been made, and that it was not a speedy trial issue because it was absolutely likely that the trial court would have tolled speedy trial to procure Beer's attendance.

¶ 38    We find, even assuming *arguendo* that counsel's failure to object to Krefft's testimony based on confrontation clause grounds was objectively unreasonable, defendant fails to sufficiently show prejudice in this case. "[A] court may proceed directly to *Strickland*'s prejudice prong and

14

need not determine whether counsel's performance was deficient." *People v. Johnson*, 2021 IL 126291, ¶ 53. To prove prejudice, defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* ¶ 54. A reasonable probability means a probability sufficient to undermine confidence in the outcome. *Id.* Speculation is insufficient, rather a defendant must " 'affirmatively prove' that prejudice resulted from counsel's errors." *Id.* ¶ 55.

¶ 39    Here, defendant contends that he was prejudiced by Beer's testimony as it was the only evidence that addressed whether defendant transported at least 900 grams of a substance containing cocaine. We disagree.

¶ 40    Other circumstantial evidence, including McKnight and Castillo's testimony, revealed additional evidence, other than Beer's report, conclude defendant transported cocaine. See *People v. Eichelberger*, 189 Ill. App. 3d 1020, 1027 (1989) ("It is undisputed a substance alleged to be a narcotic drug can be so proved by circumstantial evidence, and the State is not required to prove it through evidence of a chemical test."). Therefore, there was no prejudice in this respect.

¶ 41    However, we agree with defendant that the State was also required to prove the weight of the cocaine was 900 grams or more. "When a defendant is charged with possession of a specific amount of an illegal drug with intent to deliver and there is a lesser included offense of possession of a smaller amount, then the weight of the seized drug is an essential element of the crime and must be proved beyond a reasonable doubt." *People v. Jones*, 174 Ill. 2d 427, 428-29 (1996). Defendant was convicted of the offense of delivery of a controlled substance in that he knowingly delivered 900 grams or more of cocaine, a Class X felony. 720 ILCS 570/401(a)(2)(D) (West 2010). Under the sentencing provisions existing at the time, the Code of Criminal Conduct also contained additional offenses for the delivery of 15 grams up to less than 900 grams of cocaine.

*Id.* § 401(a)(2)(A)-(C). Therefore, because the class of defendant's offense was dependent on the amount of controlled substance the defendant was found to have delivered, the weight of the seized substance is an essential element of the offense. See *People v. Harden*, 2011 IL App (1st) 092309, ¶ 40.

¶ 42 While we again agree with defendant that Krefft's testimony was the only evidence to conclude the weight of the cocaine was more than 900 grams, we find defendant's argument oversimplifies what occurred in this case. Even assuming—*arguendo*—that Krefft's testimony should have been excluded upon counsel's objection, our analysis of prejudice does not end there.

¶ 43 In determining prejudice, courts look not only to the immediate result of counsel's alleged error under what actually occurred in a particular case but also consider the likelihood of what would have occurred had counsel not erred. For example, in cases involving ineffective assistance claims for failing to challenge a tardy indictment, courts have determined a defendant "must show prejudice based on the outcome of the trial, and not just the failure to get a temporary dismissal." *People v. Washington*, 2012 IL App (2d) 101287, ¶ 24; see *People v. Youngblood*, 389 Ill. App. 3d 209, 215 (2009) (declined to find prejudice based purely on a temporary dismissal where defendant fails to show the State would be prevented from reindicting a defendant or that a delayed indictment denied him a fair trial or hindered his ability to present a defense). Similarly, regarding counsel's ineffectiveness for requesting continuances or failing to file a speedy trial demand, courts determined any argument of prejudice would be speculative where defendant failed to argue or explain how the State would have failed to try the case within the speedy trial period had counsel filed a timely speedy trial demand. *People v. Teen*, 2023 IL App (5th) 190456, ¶ 52; *People v. Johnson*, 2023 IL App (4th) 220833-U, ¶ 19.

¶ 44 Instructive to this case is *People v. Stevens*, 2018 IL App (4th) 150871, ¶ 1, where the defendant was convicted of aggravated unlawful use of a weapon. On appeal, the defendant alleged ineffective assistance of counsel where defendant's right to confrontation was violated based on counsel's failure to object to a certified report that defendant had not applied for a concealed carry license. *Id.* ¶ 35. The appellate court determined that the defendant failed to show how he was prejudiced where he did not show that an authentication or foundation witness was unavailable to the State. *Id.* ¶ 43. The court reminded him that "[t]he burdens of production and persuasion are on defendant, and courts do not presume the existence of either element." *Id.*

¶ 45 Although this case differs from *Stevens* in that the expert needed to testify about the admitted report in this case was unavailable during trial, the reasoning utilized in *Stevens* is still applicable. Like *Stevens*, the contents of the report were improperly admitted but defendant failed to argue that the State would have been unable to properly admit the report had counsel objected. It is undisputed that the State raised this issue prior to trial. If counsel had objected or indicated an issue with Krefft testifying at that time, the State could have obtained a recorded evidence deposition of Beer prior to trial. See *People v. Tokich*, 314 Ill. App. 3d 1070, 1072, 1074 (2000) (appellate court affirmed the trial court's decision to allow a video deposition to be taken of a detective who would be out of the country at the time of the trial, pursuant to Illinois Supreme Court Rule 414 (eff. Oct. 1, 1971)). Because the State raised the issue before trial, we find the State would have been granted a continuance to either obtain an evidence deposition of Beer or otherwise procure Beer's appearance, even if counsel waited until trial to lodge an objection.

¶ 46 Defendant ignores this reality and his duty to affirmatively prove that the outcome of the proceedings would have been different absent counsel's alleged error. *Johnson*, 2021 IL 126291, ¶ 55. He fails to argue that the State would have been precluded from obtaining an evidentiary

17

deposition. Defendant also provides no argument regarding the timeframe of Beer's unavailability and whether procuring her attendance would have been unlikely under our court rules or speedy trial concerns. Moreover, defendant fails to explain why or argue that the State would have been precluded from retesting and reweighing the substance with an available technician or Krefft. Importantly, defendant does not contend the report was—in any way—incorrect or misleading. See *People v. Cox*, 2017 IL App (1st) 151536, ¶ 88 ("[T]he only way that defense counsel's decision not to object to the certification could *possibly* be ineffective assistance was if defendant actually had a FOID card and the certification was in error." (Emphasis in original.)); *People v. Johnson*, 2019 IL App (1st) 161104, ¶ 32 (same). Under the facts of this case, we find—without more—concluding the State would have been precluded to otherwise admit this evidence is speculation. Accordingly, we find defendant failed to affirmatively establish prejudice, which precludes his ineffective assistance of counsel claim. See *Cherry*, 2016 IL 118728, ¶ 31 (the failure to establish either prong precludes an ineffective assistance of counsel claim). We therefore affirm the circuit court's dismissal of defendant's petition.

¶ 47                                    III. CONCLUSON

¶ 48     For the foregoing reasons, we affirm the circuit court's order dismissing defendant's postconviction petition.

¶ 49     Affirmed.

¶ 50     JUSTICE McHANEY, dissenting:

¶ 51     I respectfully dissent. The majority argues in essence that because the defendant failed to establish that the State would not have been granted a continuance to introduce expert testimony establishing the weight of the controlled substance, cocaine, the defendant's argument regarding

18

prejudice is "speculation." The problem with that conclusion is that relying on the assumption that the trial court would have granted the State a continuance is equally speculative.

¶ 52     I agree that trial counsel's reliance on a "blind mule" defense could be deemed a matter of trial strategy, and therefore the substance, and its weight, contained in the package was irrelevant to this defense. However, evidence of sound trial strategy is rebutted where the record clearly establishes that trial counsel failed to stipulate to the inadmissible hearsay evidence presented by the State through Krefft's testimony (defense counsel may waive defendant's right of confrontation where defendant does not object and decision to stipulate is a matter of trial tactics and strategy). *People v. Allen*, 2016 IL App (4th) 140137, ¶ 49. While trial counsel may agree to stipulate to the contents of a lab report as a matter of trial strategy in an effort to minimize the adverse impact it will have at trial (see *Allen*, 2016 IL App (4th) 140137, ¶ 50), that did not occur here because trial counsel, as previously noted, failed to stipulate and then failed to minimize the evidence contained in the report where he engaged in cross-examination of Krefft on the very issues of the nature and weight of the substance. Thus, without a stipulation, the defendant's right of confrontation was not waived.

¶ 53     It is notable that the State conceded that the confrontation clause "was implicated" by Krefft's testimony. Nevertheless, the majority finds that even assuming *arguendo* that trial counsel's failure to object to Krefft's testimony based on confrontation clause grounds was objectively unreasonable, the defendant failed to sufficiently show prejudice. They go on to dismiss the defendant's argument that he was prejudiced by Krefft's testimony where it was the only evidence that addressed the weight of the substance. Instead, the majority finds there was other circumstantial evidence, including McKnight and Castillo's testimony, which established that the defendant transported cocaine. There are two problems with this finding. First, the

defendant's argument that he was prejudiced focused on the State's failure to prove *the weight* of the cocaine. Second, neither McKnight nor Castillo testified to *the weight* of the cocaine. "When a defendant is charged with possession of a specific amount of an illegal drug with intent to deliver and there is a lesser included offense of possession of a smaller amount, then the weight of the seized drug is an essential element of the crime and must be proved beyond a reasonable doubt." *People v. Jones*, 174 Ill. 2d 427, 428-29 (1996). Here, the defendant was convicted of the offense of delivery of a controlled substance in that he knowingly delivered 900 grams or more of cocaine, a Class X felony. 720 ILCS 570/401(a)(2)(D) (West 2010). Under the sentencing provisions existing at the time, the Code of Criminal Conduct also contained additional offenses for the delivery of 15 grams up to less than 900 grams of cocaine. 720 ILCS 570/401(a)(2)(A)-(C) (West 2010). Therefore, because the class of the defendant's offense was dependent on *the weight* of the cocaine the defendant was found to have delivered, the weight of the cocaine was an essential element of the offense. See *People v. Harden*, 2011 IL App (1st) 092309, ¶ 40. Thus, because trial counsel failed to either stipulate to the lab report or object to its admission at trial, the State was allowed to prove an essential element of the offense on the basis of inadmissible hearsay evidence.

¶ 54    Under the facts presented, there is more than a reasonable probability that the result of the trial would have been different as without Krefft's inadmissible hearsay testimony, the State would have been unable to establish the weight of the cocaine, an essential element of the offense. Accordingly, I believe the defendant made a substantial showing of a constitutional violation at the third-stage evidentiary hearing and would be entitled to a new trial.