2026 IL App (2d) 250215-U
No. 2-25-0215
Order filed April 28, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v. DAVID ROLL, Defendant-Appellant.

Appeal from the Circuit Court of Kendall County.
Honorable Carlo Colosimo, Judge, Presiding.
No. 23-CF-441

JUSTICE BIRKETT delivered the judgment of the court.
Justices Schostok and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant' s trial counsel was not ineffective for failing to object to admission of computer-stored data as hearsay; defendant failed to show a reasonable probability that the State could not lay the required foundation for the data to be admitted as business records.  Therefore, the judgment is affirmed.

¶ 2    After a jury trial, defendant, David Roll, was convicted of three counts of retail theft of merchandise with a value of more than $300 (720 ILCS 5/16-25(a)(1) (West 2022)) and sentenced to concurrent four-year prison terms.  On appeal, he argues that his trial counsel was ineffective for failing to object to the State's evidence of the value of the merchandise as inadmissible hearsay, without which the State could have proved only the lesser-included offense of misdemeanor retail theft (*id*. § 16-25(a)).  We affirm.

¶ 3                                I. BACKGROUND

¶ 4     The State charged defendant with committing retail theft at the Menards in Yorkville on June 21, 2023 (count I), August 15, 2023 (count II), and October 18, 2023 (count III). We turn to the pertinent trial evidence. Because defendant does not contest the proof that he committed theft, we address primarily the evidence related to the value of the stolen items.

¶ 5     Danielle Vazquez testified as follows. Since 2020, she had been the "front end manager" at the Yorkville Menards. Vazquez dealt with "guest service, the cash register, [and] security." In her position, Vazquez was aware of the price of each item that was offered for sale in the store at a given time. Also, she could ring up an item on a cash register or type the item's description into a computer and ascertain the item's price, as all such information was stored in the Menards computer system. Vazquez also could access security-camera footage.

¶ 6     Vazquez testified that, on June 21, 2023, sometime before 1 p.m., the manager of the electrical department notified her that "they were missing a security system off the shelf." Vazquez went to the shelf and verified that the item was missing. She then reviewed security footage. It showed that two men entered an aisle and placed a security camera into a shopping cart. Store records showed that no security camera was purchased that day. Next on the tape, the same two men entered the housewares department, with the security camera still in the cart. They placed several "high dollar items" into the shopping cart. Vazquez ascertained that these items were missing from the shelves and had not been paid for. The two men then went to the building materials department, took a door lock off the shelf, and proceeded to the garden center. At that point, the men were out of range of any security camera.

¶ 7     Vazquez testified that next, one of the men walked inside without a shopping cart. He bought and paid for a "picking ticket" in order to enter the garden center. With a paid-for picking ticket, a customer can gain access to the garden center and load the product listed on the ticket into

their vehicle. Store employees can match the time on the ticket, as shown in the computer system, to the time the purchaser entered the garden center.

¶ 8 Vazquez testified on how a store employee can retrieve the information on a picking ticket:

"When a ticket is scanned into the yard, it is logged and it says if there is a name or information. It says the name on there and then you can click on it and it will tell you what the person is supposed to be picking up along with what time they entered and exited the yard."

¶ 9 Vazquez testified that, on June 21, 2023, she accessed the picking ticket. The picking ticket was admitted into evidence. It listed three "1 by 4 by 8 treated boards" at a total price of $13.41 that were picked up and paid for. A "transaction inquiry" retrieved from a transaction database and printed out was admitted into evidence. It listed the treated boards and three other items with a total purchase price, including tax, of $55.15. The customer paid cash.

¶ 10 Vazquez testified that, based on what the security film showed, she entered the garden center and saw an empty shopping cart. She identified all of the items that she had seen the two men place into the shopping cart and that she had ascertained were missing from the store without having been purchased that day. She compiled a list of the items and their purchase prices. The list was admitted without objection as People's exhibit No. 4. Vazquez testified that the total purchase price of these items was $1,138.97. The list, printed on a picking-ticket form, included one "HMR Drill Combo Kit," one "4-Tool Combo Kit," one "4 Cam 4K 1TB DVR Kit," and one "Secure Pro Latch." {E-14} The individual prices of these items were not given but the pre-tax total value was given as $1,138.97. Asked, "Is that based on your entering those items into your system, does that automatically generate?," Vazquez testified, "Yes."

¶ 11    Vazquez testified that she was able to identify one of the two men in the security video.  In court, she identified defendant as the man who entered the yard with the picking ticket.  The video was admitted into evidence.

¶ 12    Vazquez testified that she followed the other man on the video but lost sight of him when he was in the garden center.  The other man never paid for any additional items.  When defendant entered the garden center to pick up his items, the other man was not on the property.

¶ 13    The State played excerpts from the security video that corroborated Vazquez's testimony.

¶ 14    Vazquez testified that, on August 15, 2023, the electrical department manager notified her that a camera system had been stolen.  She verified that the item was missing and ascertained that it had not been purchased.  Vazquez then viewed security-camera footage, which showed defendant and a woman take several construction-related items off shelves and enter the garden center.  Next, they went inside, and defendant purchased a soda and a picking ticket for six patio blocks.  A transaction inquiry, admitted at trial, showed that defendant paid a total of $5.04 including tax.

¶ 15    Vazquez testified that she then went to look for the items that had been removed from the store.  She identified People's exhibit No. 8, which was admitted into evidence without objection, as a partial list of these items, including a "Finish Nailer," an "HMR Impact Combo Kit," and a "Hole Saw Kit."  The exhibit gave the pretax total purchase price of the items as $737.99.  After ascertaining that one other item was missing, she generated another document, admitted at trial without objection as People's exhibit No. 9.  It listed one security-camera system with a pretax total purchase price of $529.99.

¶ 16    The State played the security video.  Vazquez identified defendant and the woman taking the items later listed in the exhibits and placing them into a shopping cart.  They did not pay for any of the items listed on the exhibits.  The video showed defendant give the picking ticket to the

guard at the outer gate adjacent to the garden center. Defendant popped open the trunk of his vehicle, the guard glanced briefly at the trunk's contents, and defendant drove away.

¶ 17 Heather Graham testified as follows. In 2023, she was dating defendant. On August 15, 2023, they entered the Yorkville Menards together. Inside, they put several items into their cart. Going to the garden center, they left the cart there, returned inside to purchase a soda and a picking ticket for some patio bricks, then drove back to the garden center, where they picked up the bricks and drove off. Afterward, Graham learned that defendant had placed the items from the cart, for which he and Graham had not paid, into the trunk of his vehicle.

¶ 18 Graham testified that, on October 18, 2023, she and defendant rode in her car to the Yorkville Menards. Graham stayed outside. Shown a store security video from that date, Graham identified defendant exiting the store, loading items from inside the store into the car's trunk, getting into the car, and driving away.

¶ 19 Kyle Lojewski testified as follows. He was the general manager of the Yorktown Menards. As such, he was familiar with the prices of the items in the store. On October 18, 2023, Lojewski discovered that some items were missing. A car traced to defendant was driving away. Lojewski went to the exterior yard, where he found an empty shopping cart. Video recordings showed defendant enter the store, proceed to remove items from the shelves, obtain a picking ticket and then enter the exterior yard, revealed that some items were missing but had not been paid for.

¶ 20 Lojewski identified People's exhibit No. 13 as a list he compiled of the items that were missing but not paid for. The exhibit listed seven items and gave a total pretax price of $1,324.93. It did not give the price of any individual item. Lojewski did not testify as to how he ascertained the total pretax price of the items. The exhibit was admitted into evidence without objection.

¶ 21 Defendant put on no evidence.

¶ 22    The jury found defendant guilty of all three counts. Defendant filed a posttrial motion contending that he was not proved guilty beyond a reasonable doubt. The trial court denied the motion and sentenced defendant to concurrent four-year prison terms. He timely appealed.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, defendant contends that his trial counsel was ineffective for failing to object to the documents that Vazquez and Lojewski created to prove the value of the stolen items. He argues that these documents were inadmissible hearsay because the State did not lay the foundation required by Illinois Rule of Evidence 803(6) (eff. Sept. 28,2018) for their admission as business records. Defendant assert that, absent the documents, the evidence did not prove beyond a reasonable doubt that, on any occasion, the value of the stolen goods exceeded $300.

¶ 25    The State argues that defendant's claim fails because (1) any error was harmless, as Vazquez's and Lojewski's testimony based on their personal knowledge was sufficient; (2) authority construing the federal rule of evidence on which Illinois Rule 803(6) is based supports the admissibility of the documents; and (3) defendant has not shown that, had counsel objected, the State would have been unable to satisfy the foundational requirements of Rule 803(6).

¶ 26    To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance was objectively unreasonable and (2) it is reasonably probable that, absent counsel's professional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984).

¶ 27    In contending that the documents were inadmissible hearsay, defendant notes the following. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c)

(eff. Oct. 15, 2015). Hearsay is inadmissible except as provided by the Illinois Rules of Evidence. Ill. R. Evid. 802 (eff. Jan. 1, 2010). The possible exception at issue here provides:

> "(6) **Records of Regularly Conducted Activity**. Except for medical records in criminal cases, a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness ***, unless the opposing party shows that the source of information or method or circumstances or preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit". Ill. R. Evid. 803(6) (eff. Jan. 1. 2011).

¶ 28 Defendant's argument is directed against People's exhibit Nos. 4, 8, and 9, the aggregate price information sheets introduced during Vazquez's testimony, and People's exhibit No. 13, the estimate form introduced during Lojewski's testimony. Defendant also contends that, insofar as these witnesses testified to the content of these documents, that was also inadmissible hearsay. Defendant contends that although Rule 803(6) makes such documents admissible if the rule's foundational requirements are met, the State did not meet them here. Thus, he maintains, had counsel objected to the admission of the documents, the documents would not have been admitted, and he would have been convicted only of simple retail theft. See 725 ILCS 5/16-25(f)(3) (West 2022) (value is an element of a charge of retail theft of more than $300).

¶ 29    The State acknowledges that the documents were offered in order to prove the truth of the matters stated therein, *i.e*., the aggregate retail purchase price of the stolen items relating to each charge. However, the State makes three arguments in favor of affirmance.

¶ 30    We consider first the State's argument that any error in admitting the documents, or the witnesses' recitation of their content, was harmless because the documents were cumulative of the witnesses' testimony, which was based on their personal knowledge of the stolen items' cost. The State relies on Vazquez's and Lojewski's general statements that they were familiar with the prices of the items for sale at the store at a given time.

¶ 31    We do not find the State's argument persuasive. Aside from the general statements just noted, nothing in the testimony of Vazquez and Lojewski suggested that either witness relied on her or his independent recollection of the sale prices of the stolen items. Indeed, Vazquez testified that she relied on the price information that was stored in the computer. Lojewski did not testify as to the source of his information about prices. Both witnesses provided aggregate pretax sales prices that were precise to the last penny. The most reasonable inference we can draw is that the jury found proof beyond a reasonable doubt of aggregate value based on the computer-stored information. It is inherently dubiou that the jury would have inferred from the witnesses' general testimony that they relied at all on their independent recollection of the sale prices of the merchandise. Neither witness so testified. Thus, we cannot say that the documentary evidence was cumulative of the witnesses' testimony. Therefore, we conclude that it is reasonably probable that, were the documents excluded from evidence, the jury would have refused to find the value element proved beyond a reasonable doubt.

¶ 32    The State relies on *People v. De Paolo*, 317 Ill. App. 3d 301 (2000). There, the manager of a Home Depot testified that he was familiar with the prices of the items sold in the store, and

that, while walking down an aisle, he directly observed the defendant take a trimmer off the shelf and also noticed that the defendant had two ceiling fans in his cart. *Id*. at 303. At trial, the manager testified that each item sold for $99. *Id*. at 304. On appeal from his conviction of retail theft over $150, the defendant argued that his conviction had to be reduced to simple theft because the manager's testimony did not have a sufficient foundation. *Id*. at 308. The appellate court disagreed, reasoning that the manager's testimony that he was familiar with the prices of the goods in the store was sufficient. *Id*. at 308-09. The court explained that "[q]uestions regarding the knowledge of a witness in valuing property go toward the weight of the evidence, not its [admissibility.]" *Id*. at 309.

¶ 33 *DePaolo* is distinguishable. First, nothing in the opinion suggests that the store manager relied on anything other than his personal knowledge to ascertain the values of the merchandise. No arguable hearsay was involved, so the jury could not have based its verdict on improper evidence. Second, *DePaolo* held that the manager's testimony was admissible, not that it was conclusive of guilt. That the jury found that the manager's testimony on value sufficient does not mean that a reasonable jury could not have rejected the testimony. Thus, *DePaolo*, even were it on point here, would not support the State's contention that the admission of the documentary evidence was harmless.

¶ 34 The State argues next that several opinions that apply Federal Rule of Evidence 803(6), on which Illinois Supreme Court Rule 803(6) is modeled, support the admissibility of the documents at issue. See *United States v. Warner*, 638 Fed.Appx. 961 (11th Cir. 2016); *United States v. Fujii*, 301 F.3d 535 (7th Cir. 2002); *Branch v. Government Employees Insurance Co.*, 286 F.Supp.3d 771 (E.D. Va. 2017). The State correctly notes that these opinions hold that "[c]omputer data compiled and presented in computer printouts prepared specifically for trial is admissible under Rule 803(6),

even though the *printouts* themselves are not kept in the ordinary course of business." (Emphasis in original). *Fujii*, 301 F.3d at 539; see also *Branch*, 286 F.Supp.3d at 777; *Warner*, 638 Fed.Appx. at 964. However, under these authorities, although the printouts need not satisfy the foundational requirements of the rule, the underlying records still must do so. *Fuji*, 301 F.3d at 537, 539 (printouts were admissible because computer-stored records that they summarized met the rule's foundational requirements); *Warner*, 638 Fed.Appx. at 963-64 (printouts were admissible only because underlying records met foundational requirements); *Branch*, 286 F.Supp.3d at 777 (same).

¶ 35    Here, there was no foundational testimony; the records were admitted without it. Thus, the federal opinions are not persuasive. This brings us to the State's final basis for affirmance.

¶ 36    The State argues last that, even if trial counsel performed unreasonably, defendant has failed to show prejudice. Specifically, the State maintains, defendant has not shown that it is reasonably probable that, had counsel objected that the exhibits were inadmissible because the State had not satisfied Rule 803(6), the State would have been unable to overcome the deficiency by providing testimony or other evidence that supplied the necessary foundation.

¶ 37    The State directs our attention to *People v. Stevens*, 2018 IL App (4th) 150871, and, as persuasive authority, *People v. Allen*, 2024 IL App (5th) 220283-U. In *Stevens*, the defendant argued that his trial counsel was ineffective for acquiescing, both before and during trial, in the admission of a certified report that stated that he had not applied for a license to carry a concealed weapon. *Stevens*, 2018 IL App (4th) 150871, ¶ 35. The defendant contended that counsel's decision violated his constitutional right to confrontation because the document was hearsay and had not been properly authenticated. *Id*. ¶ 43. In rejecting this contention, the appellate court reasoned in part:

"[T]here is nothing which could have prevented the State from calling an authentication or foundation witness absent defendant's acquiescence in the use of the document. Barring some showing by defendant that such a witness was otherwise unavailable to the State, the defendant fails to show how he was prejudiced. *** Therefore, defendant cannot meet the prejudice prong, and his argument of ineffective assistance of counsel fails." *Id.*

¶ 38    In *Allen*, as pertinent here, the defendant had originally been convicted of possessing, with the intent to deliver, more than 900 grams of a substance containing cocaine. *Allen*, 2024 IL App (5th) 220283-U, ¶¶ 2-5. His conviction was affirmed on direct appeal. Later, he filed a petition under the Act, in which he contended in part that his trial counsel had been ineffective for failing to object to testimony by a forensic chemist for the Drug Enforcement Agency (DEA) (Krefft) that a report compiled by a fellow forensic chemist (Beer) who was unavailable for trial, stated that her test of a "cylindrical item" (*id.* ¶ 10) recovered from the defendant's travel bag showed that the item held 916.9 grams of a substance containing powdered cocaine. *Id.* ¶¶ 10-12.

¶ 39    At the third-stage evidentiary hearing, the sole evidence that the defendant introduced was the portion of the trial transcript pertinent to Krefft's testimony. *Id.* ¶ 25. Defendant argued that that testimony was inadmissible hearsay, without which there was no other evidence to prove the weight of the substance at issue. *Id.* The trial court rejected the defendant's claim, (1) in part because trial counsel performed reasonably by proceeding on the theory that the defendant did not know that he was transporting cocaine and (2) in part because the forensic chemist "rendered his own opinion based on the other chemist's reports." *Id.* ¶ 29.

¶ 40    On appeal, the defendant argued that the trial court had erred in rejecting his argument that trial counsel was ineffective for failing to object to the allegedly inadmissible hearsay. Citing

- 11 -

*Stevens*, the appellate court disagreed, holding that the defendant had not satisfied *Strickland*'s prejudice prong. As pertinent here, the court noted that, before the trial, the State put the defendant on notice that it would introduce the evidence, but the defendant did not object then. The court reasoned that, "[i]f counsel had objected or indicated an issue with Krefft testifying at that time, the State could have obtained a recorded evidence deposition of Beer prior to trial" or "otherwise procure[d] Beer's appearance." *Id.* ¶ 45. Thus, the defendant had failed "to affirmatively prove that the outcome of the proceedings would have been different absent counsel's alleged error." *Id.*

¶ 41    Unlike in *Stevens* or *Allen*, here nothing in the record directly shows that, before trial, the State put defendant on notice that it would be introducing either the documents at issue or the computer-stored information that they reproduced. However, that distinction does not foreclose the very real probability that, had defendant raised the hearsay objection at trial, both Vazquez and Lojewski could have supplied the needed foundation. It appears strongly that the computer-stored price information was generated in the ordinary course of business by a person with knowledge, and that it was the regular practice of Menards to compile and update information about the prices of the items in its store.

¶ 42    Moreover, it appears strongly that both Vazquez and Lojewski, as store managers who were necessarily familiar with the operation and use of the store's computer database, were, if not the actual "custodian[s]" of the database, at least "other qualified witness[es]." Ill. R. Evid. 803(6) (eff. Sept. 28, 2018). While we have found no Illinois case with similar facts, there is foreign authority holding admissible computer-stored price information that was printed out by retail-store managers or employees whom the courts deemed qualified to lay a foundation for the admission of the data. See *Pace v. State*, 375 S.W.2d 751, 755-57 (Ark. App. 2010) (store manager). At the least, defendant has not established a reasonable probability that Vazquez and Lojewski could not

have laid the needed foundation for the admission of the information at issue, as the compilation, storage, and use of this information was undoubtedly integral to the store's daily operation.

¶ 43    As defendant has not satisfied *Strickland*'s prejudice prong, his claim of ineffective assistance of trial counsel fails.

¶ 44                                    III. CONCLUSION

¶ 45    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 46    Affirmed.